Michael G. JUSTICE, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. WD 49164.

Missouri Court of Appeals,
Western District.

Jan. 10, 1995.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for appellant.

Michael G. Justice, pro se.

Before HANNA, P.J., and BRECKENRIDGE and SMART, JJ.

PER CURIAM:

The Director of Revenue (Director) appeals the trial court's order which reinstated the respondent's driver's license following his refusal to take a breathalyzer test as required by § 577.041.4, RSMo Supp.1993. We reverse and remand.

At the conclusion of the hearing, the trial court stated that the respondent had not refused to take the breathalyzer test because the police had previously administered a breathalyzer test before the one the respondent was charged with refusing. This was the reason given by the trial court for reinstating Mr. Justice's driving privileges. The preliminary test was administered on a portable machine and the issue presented here is whether it constitutes a test within the scope of § 577.020, RSMo 1986.

Following its oral ruling, the trial court entered its written order. The court's written order held that the Director had failed to meet her burden of proof in that she did not prove by "competent, credible and sufficient evidence that the Applicant was arrested ...

[or] that the arresting officer had reasonable grounds to believe that the applicant was driving a motor vehicle while in an intoxicated condition...." Finally, the court's written order stated that the Director "failed to meet [her] burden of proof in that it has not been proven by competent, credible and sufficient evidence that the Applicant did unequivocally refuse to submit to the chemical test...." All three conclusions refer to the requirements of § 577.041, RSMo Supp.1993. The written order reinstates Mr. Justice's driving privileges based on all three grounds listed in the statute. This court must examine each issue and determine whether any could be found "not in the affirmative."

The Director presented the uncontradicted testimony of two Kansas City, Missouri police officers. The arresting officer, Pamela Lee, testified that on November 16, 1993, she observed Mr. Justice traveling at a high rate of speed and straddling the lanes of traffic. She stopped Mr. Justice and upon approaching the automobile could smell what she thought was alcohol. She found Mr. Justice to be "very upset, very excited" and proceeded to administer various tests. She gave Mr. Justice the walk-and-turn test and he lost his balance while turning. He was given the finger-to-nose test and he missed the tip of his nose. The one-leg stand test caused him to sway and he had to use his arms to balance himself. Officer Lee testified that she had been trained to give an opinion as to an individual's state of intoxication.[1]

Based upon her observations and the tests she administered to the Mr. Justice, the officer concluded that "he had probably had too much to drink to be operating a motor vehicle." She requested that he go to the station and take a breathalyzer test. Mr. Justice was arrested and advised that the officer believed that he was possibly intoxicated and that he was being arrested for driving while intoxicated.

When Mr. Justice arrived at the police station, Officer Ben Eyre administered a breathalyzer test with a portable machine. The results of that test were purposely not recorded, and the officer could not recall the

---

1. Mr. Justice stipulated that the witness was qualified to give an opinion as to intoxication.

result. The officer simply observed that the indicator went up to a point which showed that the respondent was probably impaired. The respondent was then advised of his rights and the officer requested that respondent take the "main test." Officer Eyre testified that the purpose of the portable machine was to test "borderline cases." The portable machine is a time saver in that it could preclude an extensive question/answer paper report to determine probable cause.

At the police station, Mr. Justice was described by Officers Lee and Eyre as very uncooperative, combative and excited. He requested that he talk to a lawyer. A phone was made available and he was provided an opportunity to call an attorney. He apparently did not have his attorney's phone number in his billfold, so a telephone book was provided. On at least three occasions he would dial a number, become angry because the person called was not there and slam down the phone. Each time he would yell and cuss. He finally gave up. Officer Eyre then advised the respondent of his *Miranda* rights and read and explained the implied consent law to him. He was advised of the reasons the request for the breath test was being made and the consequences of refusing to take the test, and he was given another opportunity to call an attorney or somebody else. He declined. He was asked if he would take the breathalyzer examination and he said, "No. I'm not taking the exam."

It is the trial court's responsibility in a § 577.041.4 proceeding reviewing a license revocation for refusal to submit to a chemical test to determine the following: (1) whether the person was arrested; (2) whether the arresting officer had reasonable grounds to believe that the person was driving while intoxicated; and (3) whether the person refused to submit to the test. § 577.041.4, RSMo Supp.1993; *Gelsheimer v. Director of Revenue*, 845 S.W.2d 107, 108 (Mo.App.1993). If the court determines one or more of these issues not to be in the affirmative, he shall order the Director to reinstate the license or permit to drive. § 577.041.5.

■ At the conclusion of the trial, the trial court stated, "I think that the statute says, take a test—a breathalyzer test, and he did.

I don't think he's got to keep on doing it until they get the reading they want. So I'm going to find for the issues in favor of the Respondent."

The Court of Appeals will affirm the decision of the trial court unless there is no substantial evidence to support it, the decision is contrary to the weight of evidence, or the trial court erroneously declares or applies the law. *Epperson v. Director of Revenue*, 841 S.W.2d 252, 254 (Mo.App.1992).

## Whether or not the person was arrested

■ The testimony clearly demonstrated that, following the administration of the field sobriety tests, Mr. Justice was arrested for driving while intoxicated and transported to the police station. There was no evidence contradicting the arrest. In fact, in his application for a hearing regarding his revocation, the respondent admitted that he was arrested. Deference to the trial court's findings is not required when the evidence is uncontroverted and the case is virtually one of admitting the facts or when the evidence is not in conflict. *Id.* at 255. There is no evidence to support the trial court's conclusion that Mr. Justice was not arrested.

## Reasonable grounds of officer's belief

■ The Director must next prove that the arresting officer had reasonable grounds to believe that the individual was driving a motor vehicle while in an intoxicated condition.

■ A suspect's failure of some but not all of the field sobriety tests is sufficient to give the arresting officer reasonable grounds to believe that the driver was driving while under the influence of alcohol. *See Hedrick v. Director of Revenue*, 839 S.W.2d 300, 302 (Mo.App.1992). There was uncontradicted testimony that Mr. Justice was observed driving at a high rate of speed, straddling lanes and, upon being stopped, had the odor of alcohol about his person. He was administered three field sobriety tests, the results of which indicated a loss of balance. Following the field sobriety tests, he was given a preliminary breath test on a portable machine during which, according to Officer Eyre, he

"ran [the indicator] up to where it's high enough I feel he is going to be impaired on the main test and shut [it] off."

The uncontradicted testimony was that the arresting officer observed sufficient indicia of intoxication to reasonably believe that the driver was under the influence of alcohol while operating a motor vehicle. The evidence compels a conclusion that there were reasonable grounds to believe that Mr. Justice was driving while intoxicated. *Gelsheimer*, 845 S.W.2d at 109. Again, there is no evidence to support the trial court's ruling to the contrary.

### Refusal to take the test

■ Apparently this is the issue that the trial court referred to when it stated that the respondent was only obligated to submit to one test, and that since a preliminary test on a portable machine had been administered upon arrival at the police station, he had not refused to take the test which was subsequently offered. Under our standard of review pursuant to Rule 73.01 and *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), we reverse the decision of the trial court if it erroneously declared the law.

■ The only provision dealing with a portable breath test is found in § 577.021, RSMo Supp.1993, which provides for the administration of a chemical test to any person suspected of operating a motor vehicle while intoxicated in order to establish probable cause to arrest or for use as exculpatory evidence. The statute specifically prohibits use of the test results as evidence of blood alcohol content. Even though the particular test in this case was administered subsequent to Mr. Justice's arrest, the results of that test were not admissible in evidence. We find nothing sinister or illegal about the administration of this test even though it was given after probable cause had been established. The standard for determining probable cause is the probability of criminal activity rather than a prima facie showing of guilt. *Wilcox v. Director of Revenue*, 842 S.W.2d 240, 243 (Mo.App.1992). Although mere suspicion is insufficient to establish probable

cause, absolute certainty is not required. *Id.* In examining the existence of probable cause, the courts consider information possessed by an officer before arrest and all reasonable inferences drawn therefrom. *Id.* It is not surprising that some doubt may exist in the mind of the arresting or examining officer with respect to whether probable cause has been established. In those "borderline cases," in the opinion of the police officer, a portable breathalyzer examination may very well be in order for the benefit of both the police and the arrestee. We do not pass on whether this procedure should be followed by peace officers other than officers of the state highway patrol or after an arrest has been made,[2] but we are satisfied that it was not done in derogation of the standards we must apply as found in § 577.041.

The trial court believed the preliminary test to be admissible and, therefore, any subsequent test results inadmissible. Therefore, there could be no refusal. This conclusion of law was unsupported by the facts and was a misapplication of the law. Nothing in the evidence leads to the conclusion that the police kept administering tests until they got the result they wanted. The uncontroverted evidence was that the purpose of the test was to determine probable cause and that it was used in those cases which the officer considered borderline. No rights were given or explained, no recording of the test or its results was made and every indication is that it was done for the very purpose stated by the officer and not as the court concluded. A test administered with a portable breath analyzer does not constitute a test within the scope of § 577.020.

Considering the issues set forth in § 577.041.4 and the evidence as presented, we are not permitted to affirm the trial court's judgment. To do so we would have to disregard all of the uncontradicted evidence supporting the Director's position. Deference to the trial court's findings is not required when the evidence is not controverted and the case is virtually one of admitted facts or when the evidence is not in conflict. *Ep-*

---

**2.** Section 577.021, RSMo Supp.1993, specifically authorizes members of the state highway patrol to administer preliminary breathalyzer tests prior to arrest.

*person*, 841 S.W.2d at 255. Accordingly, the judgment of the trial court is reversed and the case is remanded for entry of an order sustaining the revocation of Mr. Justice's driver's license.