David Ross ROBERTS, Respondent,

v.

Quentin WILSON, Director
of Revenue, Appellant.

No. WD 60096.

Missouri Court of Appeals,
Western District.

June 25, 2002.

Jeremiah W. (Jay) Nixon, Attorney General, Karen P. Hess, Assistant Attorney General, Jefferson City, for appellant.

John R. Cullom, Kansas City, for respondent.

Before ELLIS, P.J., and EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Judge.

The Director of Revenue (Director) appeals from the judgment of the circuit court setting aside the Director's revocation, pursuant to § 577.041,[1] of the driver's license of the respondent, David R. Roberts, for the respondent's refusal to submit to a chemical test authorized by § 577.020, which was requested of him after his arrest for driving while intoxicated (DWI).

In his sole point on appeal, the Director claims that the trial court erred in granting the respondent's motion for "directed verdict" at the close of the Director's evidence and setting aside the revocation of the respondent's driver's license because the Director made a *prima facie* case for revocation under § 577.041, which was not rebutted.

We reverse and remand.

**Facts**

At approximately 3:00 a.m. on January 20, 2001, Detective Beverly Caver of the Kansas City, Missouri, Police Department was dispatched to the scene of a disturbance at a tavern. Based on the description she was given of the vehicle whose driver was reported as having been involved in the disturbance, she stopped a vehicle matching that description near the scene of the disturbance.

When Detective Caver approached the stopped vehicle and made contact with the driver, whom she later identified as the respondent, she could smell the strong odor of an alcoholic beverage, prompting her to ask him to step out of his vehicle, which he did. After the respondent had stepped out of his vehicle as requested, Detective Caver noticed that he had a difficult time standing and walking, that he had very poor balance and was stumbling, and that his speech was slurred. Given her initial observations of the respondent's condition and her conclusion that he would not be able to perform the standard field sobriety tests, Detective Caver did not ask him to perform any field sobriety tests, other than the gaze nystagmus test.[2] Based upon her observations and experience, Detective Caver determined that the respondent was intoxicated and placed him under arrest for DWI.

After being arrested, the respondent was transported to the station of the "South Patrol Division." There, he came into contact with Officer Mark Fugate, the duty officer qualified to administer the Breathalyzer test. Officer Fugate observed that the respondent was "unsteady on his feet" and "had difficulty maintaining his balance." He also detected "a strong odor of intoxicating beverage upon his breath" and that his speech "was somewhat slurred and incoherent." After removing the respondent to the room used for performing Breathalyzer tests, Officer Fugate advised him of the provisions of the Missouri Implied Consent Law (ICL) by reading them verbatim to the respondent. Specifically, Officer Fugate informed the respondent that he had been arrested for DWI, that he was requesting

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. The results of that test were excluded at the § 577.041 hearing pursuant to an objection by the respondent. However, the results were indicated on the Alcohol Influence Report (AIR), which was admitted without an objection as to the gaze nystagmus test results. There was no evidence, however, before the court as to how to interpret the gaze nystagmus results indicated in the AIR.

him to submit to a chemical test of his breath, that his refusal to take the test would result in the immediate one-year revocation of his driver's license, and that evidence of his refusal to take the test could be used against him in a prosecution in a court of law.

After advising the respondent of the provisions of the ICL, Officer Fugate asked the respondent whether he would take the Breathalyzer test. The respondent stated that he would not take the test. Based upon this response, Officer Fugate checked the box on the Alcohol Influence Report (AIR), which was admitted in evidence, signifying that the respondent had refused the test and further indicated that the refusal occurred at 4:56 a.m. Within seconds after indicating that he would not take the test as requested, the respondent advised Officer Fugate that he wanted to contact an attorney, which Officer Fugate noted on the AIR as also occurring at 4:56 a.m. In response, Officer Fugate told the respondent that "he—we would provide him a telephone, telephone books, any time—you know, anything that we could do to assist him to use the telephone, that we would provide him adequate time to contact an attorney or anyone that he would like to consult for advice." Although the respondent was provided with a telephone and telephone directories as promised, after looking through the directories provided, he stated that he was not going to make any phone calls.

Pursuant to § 577.041.3, the respondent's driver's license was revoked by the Director for his refusal to submit to the Breathalyzer test requested by Officer Fugate. Pursuant to § 577.041.4, the respondent appealed his revocation to the Circuit Court of Jackson County. The appeal was heard by the Honorable Anthony Romano on April 13, 2001. At the hearing, both Detective Caver and Officer Fugate testified for the Director. Officer Fugate was questioned on direct, cross-examination and redirect examination about the timing of the respondent's refusal to take the test and his request to contact an attorney. Twice, Officer Fugate was asked if the respondent refused the test before he asked to contact an attorney, and Officer Fugate responded both times by saying "Yes, he did." Then Officer Fugate explained:

He was given the opportunity to take the Breathalyzer test. He refused. I acknowledged that he had made a refusal, and I put it in the computer that he was taking refusal. Then he asked for an attorney.

At that point, to clear up any confusion on the issue, the trial court conducted its own examination of Officer Fugate:

Q. Officer, I'm getting the feeling these two—the no and the attorney request were almost simultaneously; am I wrong?

A. They occurred very quickly, Your Honor. If the—The way I normally do things, if an individual asks for an attorney, if they say "No, I don't want to take the test. I want to contact my lawyer," then I won't do the refusal. I will allow them time to contact an attorney before I do anything else. But if they make the statement: "No. I will not take the test," and they do not ask for an attorney at that time, then I automatically will go into the refusal portion of the test.

. . .

Q. I think it's significant, and that's why I'm trying to determine—

A. Right.

Q.—how much time elapsed from the time he said no and you pushed the [refusal] button and he said, "I want an attorney."

A. Okay. It would be hard to recall that time frame. It would have been within a minute, based upon the times indicated on the report and on the machine.

Q. Okay.

A. It could have been 20 seconds; it could have been 40 seconds. That, I don't recall, Your Honor.

Q. And, if I understand you, you said his speech was pretty slurred or slow at that time?

A. Yes.

At the close of the appellant's evidence, the respondent moved for a "directed verdict," alleging that the respondent's refusal to take the chemical test requested was conditioned upon a request to contact an attorney, which was not a refusal under § 577.041.1 requiring revocation of his driver's license. The trial court took the matter under advisement. On April 23, 2001, the court, finding "the issues specified in Section 577.041 R.S.Mo, not to be in the affirmative," entered its judgment ordering the Director to reinstate the respondent's driving privileges.

This appeal follows.

## Standard of Review

■■■ In determining our standard of review, we note that the Director claims error with respect to the trial court's granting of the respondent's motion for "directed verdict" at the close of the Director's evidence, which resulted in the setting aside of the revocation of the respondent's driver's license. In that regard, the record discloses that counsel for the respondent did, in fact, denominate his motion at the close of the Director's case as one for a directed verdict, which the trial court sustained. Of course, in a court-tried case, such as ours, there is no verdict to direct. *Kamil, Decker & Co.,*

*P.C. v. SMC Properties, Inc.,* 998 S.W.2d 818, 819 (Mo.App.1999). A motion at the close of the plaintiff's evidence in a court-tried case is a "motion for a judgment on the grounds that upon the facts and the law the plaintiff is not entitled to relief." Rule 73.01(b). Thus, regardless of how the motion was denominated by respondent's counsel at trial, we must treat it as a motion submitting the issues on the merits, requiring us to review under the standard enunciated in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. *banc* 1976). *Kamil,* 998 S.W.2d at 819; *Testerman v. Dir. of Revenue, State of Mo.,* 31 S.W.3d 473, 475 (Mo.App.2000). As such, we must affirm the judgment of the trial court setting aside the revocation of the respondent's driver's license by the Director, unless we find that there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Testerman,* 31 S.W.3d at 475.

## I.

In his sole point on appeal, the Director claims that the trial court erred in setting aside the Director's revocation of the respondent's driver's license because the Director made a *prima facie* case for revocation under § 577.041.3, which was not rebutted. Specifically, the Director claims that the evidence established that: "(1) the arresting officer had reasonable grounds to believe that [the respondent] had been driving a motor vehicle in an intoxicated condition; (2) the officer sufficiently informed [the respondent] of the basis for requesting him to submit to a breath analysis test; and (3) [the respondent] refused to submit to a breath analysis test before he requested to speak to an attorney." We agree.

■■■ Pursuant to § 577.041.4, "[i]f a person's license has been revoked because

of the person's refusal to submit to a chemical test, [as provided in § 577.020,] such person may petition for a hearing before a circuit or associate circuit court[3] in the county in which the arrest or stop occurred." At the hearing, the Director has the burden of proving all the requisite elements for upholding the revocation. *Testerman,* 31 S.W.3d at 475–76. In order to make a *prima facie* case for upholding a § 577.041 revocation for a refusal in a DWI case, like the case at bar, the Director is required to show: (1) the driver was arrested; (2) the arresting officer had reasonable grounds to believe the driver was DWI;[4] and (3) the driver refused to submit to an authorized chemical test as requested. Section 577.041.4; *Mount v. Dir. of Revenue, State of Mo.,* 62 S.W.3d 597, 599 (Mo.App.2001). If the Director makes a *prima facie* case, the burden then shifts to the driver to rebut that case by a preponderance of the evidence. *Testerman,* 31 S.W.3d at 475–76.[5]

As to the first element of the Director's *prima facie* case for revocation, that the respondent was arrested, the record reflects that that element was established in that Detective Caver unequivocally testi- fied at the § 577.041.4 hearing that she arrested the respondent for DWI. As to the second element, that the arresting officer, Detective Caver, had reasonable grounds to believe the respondent was DWI, the record would indicate that that element was also established.

■ Reasonable grounds to arrest a driver for DWI to support a revocation for refusal is virtually synonymous with probable cause to arrest a driver. *Wilson v. Dir. of Revenue,* 35 S.W.3d 923, 926 (Mo.App.2001). In determining whether there were reasonable grounds to arrest a driver for DWI, the trial court must evaluate the situation from the viewpoint of a cautious, trained, and prudent police officer at the time of the arrest. *Id.* Here, the Director's evidence, which included Detective Caver's testimony at the § 577.041.4 hearing and the AIR, was that the respondent had a strong odor of alcohol on his breath; his eyes were "watery" and "bloodshot"; his pupils were "dilated"; his balance was "wobbling" with "sagging knees"; his walking was "stumbling" and "staggering"; his speech was "slurred" and "incoherent"; his clothing was "mussed"; his attitude was "cooperative," "antagonistic," and "un-

---

3. Despite this language of the statute refer- ring to an "associate circuit court," there is no such court in this state. Pursuant to Arti- cle V, § 15 of the Missouri Constitution, there is a unified circuit court of which there are divisions, including divisions presided over by associate circuit judges.

4. It should be noted that § 577.041.4 speaks not only to a revocation for refusing to submit to a chemical test in a driving while intoxicat- ed or drugged case, but also to a revocation for refusal in an under-twenty-one driver case. The second element of the Director's *prima facie* case in a driving while intoxicated or drugged case, found at § 577.041.4(2)(a), would be different from the second element in an under-twenty-one driver case, found at § 577.041.4(2)(b) or (c).

5. *Testerman* involved the suspension of a driv- er's license under § 302.505.1 for DWI, rath- er than a revocation for refusal under § 577.041. While *Testerman* and other cases involving suspensions and revocations pursu- ant to § 302.505.1 routinely discuss the re- quirements for the Director to make a *prima facie* case and the driver's duty to rebut the same, cases revolving revocation under § 577.041 for some unexplained reason do not. It seems only logical to us, however, given the similarity between these two statu- tory provisions for administratively suspend- ing or revoking a driver's license resulting from a stop or arrest for DWI, that the same *prima facie* procedure for judicial review enunciated in *Testerman* for § 302.505.1 cases, except as to the actual elements of the *prima facie* case, would apply to § 577.041 cases, such as the case at bar.

cooperative"; and his ability to follow instructions was "poor." The foregoing was obviously sufficient to establish that the arresting officer had reasonable grounds to believe that the respondent was DWI. *Peters v. Dir. of Revenue,* 35 S.W.3d 891, 896–97 (Mo.App.2001).

As to the third element of the Director's *prima facie* case for revocation, that the respondent refused to submit to the Breathalyzer test as requested, the record reflects that there was sufficient evidence to establish that element. A driver's refusal to submit to a chemical test is governed by § 577.041.1, which reads, in pertinent part:

If a person under arrest, or who has been stopped pursuant to subdivision (2) or (3) of subsection 1 of section 577.020, refuses upon the request of the officer to submit to any test allowed pursuant to section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding pursuant to section 565.024 or 565.060, RSMo, or section 577.010 or 577.012. The request of the officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of refusal to take the test may be used against such person and that the person's license shall be immediately revoked upon refusal to take the test.

A "refusal," for purposes of this section, means declining of one's own volition to take a chemical test authorized by § 577.020 when requested by an officer to do so. *Mount,* 62 S.W.3d at 599. A refusal occurs, in response to a request by an officer to submit to a chemical test, by expressly saying, "I refuse" or using similar language; by remaining silent; or by not blowing into the Breathalyzer. *Id.* A qualified or conditional consent or refusal is considered a refusal for purposes of

§ 577.041.4(3), except where a driver qualifies a refusal on his or her having an opportunity to contact an attorney, as provided in § 577.041.1. *Mount,* 62 S.W.3d at 599. In that regard, § 577.041.1 reads:

If a person when requested to submit to any test allowed pursuant to section 577.020 requests to speak to an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney. If upon the completion of the twenty-minute period the person continues to refuse to submit to any test, it shall be deemed a refusal.

To trigger this twenty-minute period for attempting to contact an attorney, the driver must request to speak to an attorney at the time the driver is asked to submit to a chemical test. *Eckenrode v. Dir. of Revenue,* 994 S.W.2d 583, 586 (Mo.App.1999).

In our case, the evidence was that within a matter of seconds after refusing to take the Breathalyzer test as requested, twenty to forty seconds, the respondent advised Officer Fugate that he wanted to contact an attorney. Given its judgment and comments, the trial court obviously inferred from this that the respondent's refusal was conditioned on his being allowed to contact an attorney, as provided in § 577.041.1, such that there was not a refusal under § 577.041.4(3). Whether this was a reasonable inference we need not decide given what the Director's evidence established occurred after the respondent made his request to contact an attorney.

On direct examination, Office Fugate testified as to what occurred after the respondent indicated that he wanted to contact an attorney:

A. I told him that he—we would provide him with a telephone, telephone books, any time—you know, anything that we could do to assist him to use the

telephone, that we would provide him adequate time to contact an attorney or anyone that he would like to consult for advice.

Q. Did you do that in this case?

A. We provided telephone books. We did have a telephone where he was sitting.

Q. Okay.

A. And he did not use the telephone.

Q. Okay. When you say he did not use the telephone, what did he—what exactly did he do, if anything?

A. If I recall, he looked through the telephone books and he said that he wasn't going to make any phone calls.

This evidence established that the respondent abandoned any attempt to contact an attorney. Thus, even assuming that the respondent's request to contact an attorney, after he said he would not take the test, triggered the twenty-minute window of § 577.041.1 such that there was no refusal to support a revocation, his subsequent abandonment of any attempt to contact an attorney worked to cause a refusal. *Wall v. Holman,* 902 S.W.2d 329, 331 (Mo. App.1995). Hence, the Director made a *prima facie* case for revocation under § 577.041, causing the burden to shift to the respondent to present evidence in rebuttal of the same. *Testerman,* 31 S.W.3d at 475–76. No such evidence was ever presented in that, as was noted, *supra,* the trial court granted the respondent's motion for "directed verdict" at the close of the Director's case.

Given the fact that the Director's *prima facie* case was not rebutted, the trial court clearly erred in setting aside the Director's revocation of the respondent's driver's license and ordering its reinstatement. Thus, we reverse the judgment of the trial court. And, inasmuch as the respondent did not have an opportunity to present any rebuttal evidence, we remand the case to the trial court to give the respondent that opportunity. *Schulte v. Dir. of Revenue, State of Mo.,* 995 S.W.2d 509, 512 (Mo.App. 1999).

### Conclusion

The judgment of the trial court setting aside the Director's revocation of the respondent's license and ordering its reinstatement is reversed and the case remanded to the court for further proceedings in accordance with this opinion.

ELLIS, P.J., and HOWARD, J., concur.