Stephanos L. **FREEMAN**, Petitioner–Respondent,

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI**, Respondent–Appellant.

No. 25249.

Missouri Court of Appeals, Southern District, Division One.

Aug. 29, 2003.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Assistant Attorney General, Jefferson City, for appellant.

No Appearance for Respondent.

ROBERT S. BARNEY, Judge.

The Director of Revenue ("the Director") appeals from the trial court's judgment reinstating the driving privileges of Stephanos L. Freeman ("Freeman") following the one-year revocation of those privileges by the Director for refusal to submit to a chemical breath analysis.[1] We reverse and remand.

Early in the morning of April 6, 2002, Officer Craig Harter ("Harter") of the Springfield, Missouri police department observed Freeman driving his car in an erratic manner. After stopping Freeman, Harter administered several field sobriety tests, which Freeman failed. Included among these tests was a portable breathalyzer test, which measured Freeman's blood alcohol content ("BAC") as .171 percent.[2] Harter arrested Freeman for driving while intoxicated and transported him to the Greene County jail.

Upon arriving at the jail, Harter read to Freeman the so-called "Implied Consent" warning from the standard Alcohol Influence Report ("AIR") used by the police department. Pursuant to the warning, Harter informed Freeman he was under arrest for driving while intoxicated and that he was requesting that Freeman submit to a test of his breath. Freeman agreed to the test.

According to Harter, Freeman "began blowing very hard" into the testing machine at the outset of the breath test. Then he "quit blowing, but ... kept his mouth on the mouthpiece" with his "cheeks ... puffed out." The machine indicated that "not enough air [was] going into it to register that [Freeman] was

---

1. Freeman elected not to file a brief in this court. We are therefore without the benefit of any argument he may have lodged against reinstating his revocation.

2. Effective September 29, 2001, the legal limit of a driver's BAC in Missouri is .08 percent by weight. *See* Section 302.505. References to statutes are to RSMo (2000) unless otherwise indicated.

blowing." Harter instructed Freeman to continue to blow into the machine and that if he "kept pretending to blow" the test would be registered as a refusal. Freeman then began to "blow and then stop, blow and then stop." When Harter again instructed Freeman to blow continuously until the machine registered a sufficient sample, and informed him that his refusal would result in the automatic revocation of his driver's license, Freeman refused to continue with the testing. When the machine indicated that the time for submitting a sample had expired, Harter keyed into the machine that Freeman had refused the test and the machine printed out a "refusal ticket."

Under cross-examination Harter acknowledged that during the aborted breath test, the display on the testing machine registered a BAC reading of .165 percent. Harter testified it was department policy not to print an "evidence ticket" memorializing that reading and that the test was not considered complete unless the machine indicates a sufficient sample has been collected.

Pursuant to Section 577.041.1, the Director revoked Freeman's driver's license for refusing to submit to a chemical test for intoxication. On April 12, 2002, Freeman filed a petition seeking a hearing pursuant to Section 577.041.4 and the reinstatement of his driving privileges. On April 16, 2002, the trial court entered a temporary order staying the revocation of Freeman's driver's license. A hearing on Freeman's petition was held on August 27, 2002, during which the court heard testimony from Harter and Freeman. On September 23, 2002, the trial court entered its judgment in favor of Freeman and ordered the Director to reinstate his driving privi-

leges. The judgment contained no findings of fact or conclusions of law. This appeal follows.

 Our review of a trial court's judgment following a bench trial is limited to a determination of whether the judgment is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law; only an affirmative answer to one of these queries results in the reversal of the judgment. *Burleson v. Director of Revenue*, 92 S.W.3d 218, 220 (Mo.App. S.D.2002) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).[3] "If the evidence is uncontroverted or admitted, so that the real issue is legal in nature, this court need not defer to the trial court's judgment." *Burleson* at 220 (*citing Heskett v. Director of Revenue*, 62 S.W.3d 103, 105 (Mo.App. S.D.2001)).

In her sole point on appeal, the Director assigns error to the trial court for setting aside the revocation of Freeman's driver's license because the uncontroverted evidence established that he refused to submit to a chemical test of his breath.

 Only three issues are properly before a trial court in its review of a license revocation under Section 577.041:(1) whether the driver was arrested, (2) whether the arresting officer had reasonable grounds to believe the driver was driving a motor vehicle while intoxicated, and (3) whether the person refused to submit to a chemical test for intoxication. Section 577.041.4; *Burleson* at 220–21; *Mansfield v. Director of Revenue*, 82 S.W.3d 225, 226 (Mo.App. W.D.2002). Here, the parties stipulated that Freeman was arrested and that Harter had reasonable grounds to believe he was driving

---

**3.** *Murphy* interpreted the provisions of Rule 73.01(c), the provisions of which now appear in essentially the same form in Rule 84.13(d).

References to rules are to Missouri Rules of Civil Procedure (2002) unless otherwise indicated.

while intoxicated. Thus, the only issue for the trial court's resolution was whether Freeman refused a chemical test.

Although, the trial court's judgment reveals nothing of the rationale underlying it, "based upon the gratuitous statements offered by the trial court following the evidentiary hearing," *Wright v. Fisher*, 89 S.W.3d 548, 549 (Mo.App. W.D.2002), it appears the trial court was persuaded by the fact that the testing machine displayed a BAC of .165 percent during Freeman's aborted breathalyzer test. The hearing on Freeman's petition seeking reinstatement concluded with the following exchange:

> THE COURT: What do you think about the officer's credibility in his written report where he says that he saw [Freeman] blow it up to 1.65[sic]? Is that—Do you do that when you refused?
>
> [DIRECTOR'S COUNSEL]: Yes, you do, Judge. If you—There's a read out on ... the instrument that will go up as the BAC—
>
> THE COURT: Well, I understand that, but—
>
> [DIRECTOR'S COUNSEL]: If you stop blowing[,] though, then you don't get a ... usable result.
>
> THE COURT: Well, I disagree. Judgment for the petitioner is granted.

The issue before us has been addressed previously. *See Snow v. Director of Revenue*, 935 S.W.2d 383 (Mo.App. S.D.1996). In *Snow*, the appellant made three separate and unsuccessful attempts to submit to chemical analysis of her breath, but claimed that her asthma prevented her completion of the test. *Id.* at 384. Although the appellant was either unable or unwilling to provide a sample adequate to complete the test, the arresting officer observed the testing machine's readout display a BAC of .20 percent. *Id.* The appellant refused to submit to a blood test in lieu of a breath test, and her license was revoked for one year pursuant to Section 577.041.1. *Id.*

The trial court in *Snow* reinstated the appellant's driver's license because, notwithstanding her failure to complete the test, she was able to submit a sample sufficient to register a .20 BAC on the machine's display. *Id.* According to the trial court, this precluded a finding that the appellant had refused a chemical test. *Id.* We disagreed, and reversed the trial court's judgment, noting that the operating guidelines for performing a test using the machine in question required submission of an adequate sample and discounted any premature BAC readings. *Id.* at 385–86. We also noted that whether the appellant's failure to give a sufficient breath sample was properly deemed a refusal by the arresting officer was ultimately immaterial, in that she later refused a blood test and was, therefore, subject to revocation. *Id.* at 386. *See also Borgen v. Director of Revenue*, 877 S.W.2d 172, 175 (Mo.App. W.D.1994) (driver "refused" chemical test for purposes of implied consent statute where, following initial consent to test, he could not give adequate breath sample and refused subsequent request to submit to a blood test).

The analogous relationship of *Snow* to the instant case is apparent. As was the case in *Snow*, here the arrested driver refused to complete a chemical test of his breath and, per established policy, the arresting officer did not consider or preserve a premature BAC reading that established the driver's intoxication. Moreover, just as the appellant in *Snow* refused the arresting officer's request that she submit to a blood test when the breath test was unsuccessful, Freeman refused to submit a breath sample subsequent to his initial failed attempt to provide an adequate sample. The rationale for reinstatement that was espoused by the trial court in *Snow*,

and rejected by this court, also appears to have been the basis for the trial court's judgment here. As such, we are compelled to hold that the trial court's judgment was against the weight of the evidence and a misapplication of the law. *See Burleson* at 220.

The judgment of the trial court is reversed and the case is remanded with directions to reinstate the one-year revocation of Freeman's driver's license.

MONTGOMERY, P.J., and GARRISON, J. concur.