Sara R. RUTH, Respondent,

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.**

No. 25991.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 20, 2004.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Cheryl Caponegro Nield, Asst. Atty. Gen., Jefferson City, for Appellant.

No brief filed for Respondent.

ROBERT S. BARNEY, Judge.

Appellant, Director of Revenue ("Director"), revoked the driver's license of Respondent, Sara R. Ruth ("Driver"), for a period of one year for failing to submit to a chemical test following her arrest for driving while intoxicated pursuant to section 577.010.[1] *See* § 577.020–577.041. Driver filed a petition for review in the Circuit Court of Jasper County, and after a hear-

---

1. Statutory references are to RSMo 2000 unless otherwise indicated. Rule references are to Missouri Court Rules (2003), unless otherwise indicated.

ing, the court determined that while Driver "was arrested for [d]riving while [i]ntoxicated," she "did not refuse to submit to a chemical test of her Blood Alcohol Level (BAC)" and ordered the reinstatement of Driver's driving privileges.

At trial, Director presented no live witnesses. Instead, Director offered a certified copy of the police report and a copy of the alcohol influence report ("AIR") into evidence. § 302.312. Those records reveal that on the evening of May 29, 2003, Captain Jason Wright ("Wright") and Officer Wanda Hembree ("Hembree") were on patrol in Joplin, Missouri. While stopped at a traffic light, they observed a Ford Ranger stopped in the right hand lane of the roadway in front of them. From their vantage point they could see that the passenger door of the vehicle was open and someone was leaning out of the vehicle. Activating their emergency lights, the officers pulled up behind the vehicle to "see if [they] could be of any assistance."

As they approached the vehicle, the officers "smell[ed] a strong odor of intoxicants." The officers asked Driver if there was anything wrong and she stated that " 'her friend had too much to drink and was sick.' " Wright asked the passenger if he needed medical assistance and he indicated that he did not. While Driver was providing Wright with her driver's license and insurance information, Wright noted that there was vomit inside Driver's vehicle. Wright then returned to his police vehicle and ran a check for outstanding warrants on Driver.

After returning to Driver's vehicle, Wright asked her if she had been drinking that evening. Driver "stated she had been drinking a couple of hours ago." During his discussion with Driver, Wright noticed "a strong odor of intoxicants coming from

her person" and decided to request Driver to perform several field sobriety tests.

Wright wrote on the AIR that Driver's eyes were watery, bloodshot, and glassy; she was wobbling and staggering; and, her speech was slurred. Wright performed the horizontal gaze nystagmus test on Driver and her "eyes tracked equally"; however, on the walk-and-turn test Driver was unable to keep her balance. It was also reported that Driver also started performing the test before the instructions were finished; she stopped while walking in order to steady herself; did not touch her heel to her toe; lost her balance while walking and turning; and, took an incorrect number of steps contrary to the instructions given her. Similarly, during the one leg stand test, Driver swayed while balancing, used her arms for balance, and put her foot down during the test. Following Driver's failure of two out of three field sobriety tests, Driver performed a preliminary breath test ("PBT") which was positive for the presence of alcohol. Thereafter, Driver was arrested for driving while intoxicated.

Upon arrival at the police station, Driver was informed of her *Miranda*[2] rights. After answering several questions, Driver indicated that she "[didn't] want to answer any more questions."

The record shows that Driver was read Missouri's implied consent law and was asked to submit to a chemical test of her breath. §§ 577.020; 577.041. Hembree determined Driver refused to submit to the test and noted the refusal on the AIR report.

At trial, Driver testified on her own behalf. Driver stated that when Wright asked her to take the chemical test at the police station, she "asked why, since [she] had already been given a breathalyzer and

---

2. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

he explained it to [her], and then [she] asked if [she] could have time to think about it." She stated that Wright told her she needed to take a second test at the police station because "the field test was not admissible in court."[3] After her request, Driver said that Wright "just started asking more questions about the events that had happened that night." She testified that he never asked her to take the chemical test again and that when she "asked about it [ ] he said that he had already written up the refusal forms."

The trial court found that Driver had been arrested for driving while intoxicated,[4] but that Driver had not refused to submit to the chemical test. Thereafter, the trial court reinstated Driver's license and Director appeals.

■■■ We review the trial court's judgment after a trial de novo under the *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), standard.[5] *Brown v. Dir. of Revenue*, 34 S.W.3d 166, 169 (Mo.App.2000). "Our review of a trial court's judgment following a bench trial is limited to a determination of whether the judgment is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law; only an affirmative answer to one of these queries results in the reversal of the judgment." *Freeman v. Dir. of Revenue*, 113 S.W.3d 307, 309 (Mo.App.2003). "In a driver's license revocation case, a trial court has the prerogative when weighing

witness credibility, to accept or reject all, part, or none of the testimony of any witness." *Hawk v. Dir. of Revenue*, 943 S.W.2d 18, 20 (Mo.App.1997). "[W]here the disputed question is not a matter of direct contradictions by different witnesses," this Court is not required to defer to the findings of the trial court. *Myers v. Dir. of Revenue*, 9 S.W.3d 25, 28 (Mo.App. 1999). Additionally, "[d]eference to the trial court's findings is not required when the evidence is uncontroverted and the case is virtually one of admitting the facts or when the evidence is not in conflict." *Justice v. Dir. of Revenue*, 890 S.W.2d 728, 730 (Mo.App.1995). Accordingly, " '[i]f the evidence is uncontroverted or admitted, so that the real issue is legal in nature, this [C]ourt need not defer to the trial court's judgment.' " *Freeman*, 113 S.W.3d at 309 (quoting *Burleson v. Dir. of Revenue*, 92 S.W.3d 218, 220 (Mo.App.2002)).

■■ On appeal, Director maintains that the trial court erred in reinstating Driver's driving privileges because Driver was arrested on reasonable grounds to believe she was driving while intoxicated and the evidence revealed that Driver refused to submit to a chemical test of her blood. Specifically, Director posits that as to the issue of Driver's refusal to submit to the requested chemical test "the report indicates that [Driver] refused and [Driver] confirmed this when she testified that when asked to test, she inquired as to the

---

**3.** Section 577.021 permits an officer to give a breathalyzer test to a motorist prior to arrest. However, "[a] test administered with a portable breath analyzer does not constitute a test within the scope of § 577.020" and is not admissible as evidence of blood alcohol content. *Baker v. Dir. of Revenue*, 945 S.W.2d 589, 590 (Mo.App.1997); § 577.021.

**4.** Driver does not challenge this conclusion by the trial court. Indeed, Driver has filed no brief with this Court. While there is no pen-

alty in not filing a brief we are compelled to adjudicate Director's claim of error without benefit of whatever argument, if any, Driver could have made in response to Director's claim of error. *Sherrod v. Dir. of Revenue*, 937 S.W.2d 751, 752 (Mo.App.1997).

**5.** *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that Rule now appear in essentially the same form in Rule 84.13(d).

reasons for the request and asked for more time to think about it, and later offered to test, but by then the officer had marked her has [sic] a refusal."

■ "Only three issues are properly before a trial court in its review of a license revocation under [s]ection 577.041: '(1) whether the driver was arrested, (2) whether the arresting officer had reasonable grounds to believe the driver was driving a motor vehicle while intoxicated, and (3) whether the person refused to submit to a chemical test for intoxication.'" *Freeman,* 113 S.W.3d at 309 (quoting § 577.041.4). "The Director of Revenue must establish all of these elements by a preponderance of the evidence." *Callendar v. Dir. Of Revenue,* 44 S.W.3d 866, 868 (Mo.App.2001); *see* parallel discussion in *Verdoorn v. Dir. of Revenue,* 119 S.W.3d 543, 545 (Mo. banc 2003). If the trial court finds that the Director has failed to prove any one of these elements, the court must order reinstatement of Driver's driving privileges. *Id.;* § 577.041.5.

In its judgment, the trial court made an express finding that Driver "was arrested for [d]riving while [i]ntoxicated." It is with the third element set out above, that we are concerned with in this appeal, since no challenge has been made as to the first two elements.

That being said, we turn to the trial court's finding that Driver "did not refuse to submit to a chemical test of her Blood Alcohol Level (BAC)."

Section 577.020.1(1), Missouri's implied consent law, provides that all persons who operate a motor vehicle on Missouri's public highways are deemed to have consented to a chemical test of their breath, blood, saliva or urine to determine their blood alcohol content if they are arrested for any offense arising out of acts for which the arresting officer had reasonable grounds to believe were committed while they were driving while in an intoxicated condition. When the legislature enacted the implied consent law, it made the law "subject to the provisions of sections 577.020 to 577.041." § 577.020.1. "A driver's refusal to submit to a chemical test is governed by § 577.041...." *Roberts v. Wilson,* 97 S.W.3d 487, 493 (Mo.App.2002).[6]

■ A refusal to submit to a chemical test need not be shown by the driver's express refusal upon the initial request. *Chapman v. McNeil,* 740 S.W.2d 701, 703 (Mo.App.1987). The Supreme Court of Missouri discussed what constitutes a "refusal" under the implied consent law in *Spradling v. Deimeke,* 528 S.W.2d 759, 766 (Mo.1975):

There is no mysterious meaning to the word "refusal." In the context of the implied consent law, it simply means that an arrestee, after having been requested to take the breathalyzer test, declines to do so of his own volition. Whether the declination is accomplished by verbally saying, "I refuse", or by remaining silent and just not breathing or blowing into the machine, or by vocalizing some sort of qualified or condition-

---

6. Section 577.041.1 provides, in pertinent part:

1. If a person under arrest ... refuses upon the request of the officer to submit to any test allowed pursuant to section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding pursuant to section 565.024 or 565.060, RSMo, or section 577.010 or

577.012. The request of the officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of refusal to take the test may be used against such person and that the person's license shall be immediately revoked upon refusal to take the test.

al consent or refusal, does not make any difference. The volitional failure to do what is necessary in order that the test can be performed is a refusal.

"A qualified or conditional consent or refusal is considered a refusal for purposes of § 577.041.4(3), *except where a driver qualifies a refusal on his or her having an opportunity to contact an attorney, as provided in § 577.041.1.*" *Roberts,* 97 S.W.3d at 493 (emphasis added). Accordingly, a refusal does not have to be verbalized, and silence in response to a request to submit constitutes a refusal. *McMaster v. Lohman,* 941 S.W.2d 813, 817 (Mo.App.1997). "Once it has been determined that a driver has refused to submit to a breath test, the driver's subsequent request or offer, at a later time, to take the test does not alter his or her earlier refusal." *Moody v. Dir. of Revenue,* 14 S.W.3d 729, 732 (Mo.App. 2000). Furthermore, in *Zimmerman v. Dir. of Revenue,* this Court set out that where a subject said he did not want to take a breath test, but would do so if the officer wanted him to, such qualified or conditional consent was deemed a refusal under the implied consent law. 72 S.W.3d 634, 637 (Mo.App.2002).

In the instant matter, we observe that "the disputed question [of Driver's refusal] is not a matter of direct contradiction[ ]," and, accordingly, we are not required to defer to the findings of the trial court. *See Myers,* 9 S.W.3d at 28. Here, the evidence presented at trial unequivocally shows that Driver initially refused to submit to the breath test. The record reveals that Driver was arrested at 2:08 a.m. The AIR report indicates that Wright began to interview Driver at the police station at 2:55 a.m. and that she refused to take the chemical test at 3:00 a.m. These details from the Director's evidence are consistent with Driver's version of events as reflected by her testimony at trial.

In her testimony at trial, Driver testified that when asked to submit to a chemical test at the police station, she "asked why, since [she] had already been given a breathalyzer and [Wright] explained it to [her], and then [she] asked if [she] could have time to think about it." Accordingly, Driver acknowledged that she did not take the chemical test when it was initially offered to her, and nowhere in her response was her request for more time premised on her request to seek the assistance of counsel. *See Roberts,* 97 S.W.3d at 493. A volitional failure to do what is necessary for a test to be performed constitutes a refusal. *Spradling,* 528 S.W.2d at 766.

As previously related, " '[o]nce it has been properly determined that a driver has refused to submit to a given chemical test, the driver's subsequent request or offer, at a later time, to submit to the same or another chemical test does not alter his or her earlier refusal and has no bearing on the revocation of his or her license.' " *Phillips v. Wilson,* 66 S.W.3d 176, 178 (Mo.App.2002) (quoting *Borgen v. Dir. of Revenue,* 877 S.W.2d 172, 175 (Mo.App. 1994)). The fact that Driver changed her mind after an initial refusal and consented to the test is of no consequence. *See Moody,* 14 S.W.3d at 732; *Blanchard v. Dir. of Revenue,* 844 S.W.2d 589, 590 (Mo. App.1993). Director made a prima facie case establishing that Driver refused to submit to a chemical test and Driver failed to rebut Director's prima facie case.

We conclude that Driver refused to submit to a chemical test of her breath. The trial court incorrectly applied the law in reinstating Driver's license and its judgment is not supported by the evidence. *Murphy,* 536 S.W.2d at 32; *see Freeman,* 113 S.W.3d at 311. The judgment and order of the trial court is reversed and the case is remanded with directions to rein-

state the one-year revocation of Driver's driving privileges.

PARRISH, P.J., and SHRUM, J., concur.