**Sherry WEBB, Respondent,**

v.

**DIRECTOR OF REVENUE, State of Missouri, Appellant.**

**No. ED 83910.**

Missouri Court of Appeals,
Eastern District,
Division One.

March 15, 2005.

Jeremiah W. (Jay) Nixion, Atty. Gen., Cheryl Caponegro Nield, Jefferson City, MO, for appellant.

Robert S. Adler, St. Louis, MO, for respondent.

BOOKER T. SHAW, Judge.

The Director of Revenue ("the Director") appeals from the trial court's judgment reinstating the driving privileges of respondent, Sherry D. Webb ("Webb").

The Director argues the trial court erred in reinstating Webb's driving privileges because the Director established that Webb was arrested upon reasonable grounds to believe that she was driving a motor vehicle while intoxicated, and Webb refused to submit to a chemical test of her breath. Specifically, the Director argues that while Webb claims she received fifteen, and not twenty, minutes to attempt to contact her attorney, she never controverted the fact that she did not request an attorney before refusing to submit to a chemical test of her breath, which is necessary to trigger the twenty-minute rule under Section 577.041.1, RSMo 2000.[1] We reverse and remand for the trial court to enter judgment consistent with this opinion.

At approximately 1:55 a.m. on February 18, 2002, William Keenan, an officer of the Maryland Heights Police Department, ("Officer Keenan") observed a purple Pontiac Sunfire traveling west on Dorsett west of McKelvey. The driver made a left turn without signaling and drove into the parking lot of a closed business. The driver pulled into a parking spot and sat for ten to fifteen seconds, backed out of the parking spot, and drove in a circle around the parking lot. Officer Keenan stopped the vehicle as it approached the north exit of the parking lot.

The driver of the Sunfire identified herself by presenting a Missouri identification card, which indicated that her name was Sherry Webb. Webb told Officer Keenan that her driver's license was in the trunk of the vehicle. Webb almost fell down as she exited the vehicle to retrieve her driver's license from the trunk. She swayed as she walked and steadied herself by grabbing the vehicle's fender. She had difficulty using her key to open the trunk. When she removed her purse from the trunk, she handed the entire purse to Officer Keenan rather than removing the driver's license and handing it to him. Officer Keenan asked Webb to remove her driver's license from her purse. Webb then told Officer Keenan that her driver's license was suspended. Webb admitted she had been drinking and predicted that she "would be in trouble" because of previous experiences with the police.

Officer Keenan noted Webb's breath smelled strongly of alcohol. Her eyes were watery, bloodshot, glassy, and staring. Her pupils were dilated and reacted poorly to light. Webb swayed, wobbled, fell, and had sagging knees when walking and turning. Her speech was slurred and confused, and she mumbled. Webb performed poorly on both the walk-and-turn and one-leg stand sobriety tests. Webb displayed a lack of balance and coordination and an inability to follow instructions.

Based on Officer Keenan's observations, Officer Keenan believed Webb was intoxicated and arrested her for driving while intoxicated. Webb was then taken to the Maryland Heights police station by Officer Keenan. The Implied Consent form completed by Officer Keenan, which was admitted into evidence at the hearing, stated that Webb received the implied consent warning, declined to attempt to contact an attorney and refused to submit to a chemical test of her breath at 2:15 a.m. Officer Keenan then set up a breath testing instrument and printed a refusal ticket at 2:30 a.m.

At the revocation hearing, Webb was asked by her attorney, "And after [Officer Keenan] advised you of the Missouri Implied Consent Law, did he give you the full 20 minutes to contact an attorney?" Webb testified "no," and that Officer Keenan gave her only fifteen minutes in which to

1. All further statutory references are to RSMo 2000.

contact her attorney. She further testified that although she was able to make contact with her previous attorney, she was not able to get in contact with her present attorney, Mr. Adler, and that she did not abandon her attempts to contact him.

The Director revoked Webb's driving privileges for failure to submit to a chemical test of her breath. Webb sought review of this revocation, and a hearing before a commissioner was held on Webb's petition. The commissioner filed a Notice of Findings and Recommendations of Commissioner, which the trial court endorsed when she entered a judgment for Webb finding "on 2–18–02, the arresting officer did not have probable cause to arrest [Webb] for driving while intoxicated or an alcohol related traffic offense; and [t]hat [Webb] did not refuse to submit to a chemical test of [her] breath." The trial court ordered "[t]he administrative revocation arising out of the occurrence on 2–18–02 shall be removed from [Webb's] driving record and [her] driving privileges be *reinstated*." (emphasis in original). The Director appeals from this judgment.

■ The Director's sole point on appeal asserts the trial court erred in reinstating Webb's driving privileges because (1) the officer had probable cause to arrest Webb for driving while intoxicated; and (2) Webb refused to submit to a chemical test of her breath.

■ The trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002). "However, in license revocation cases, a trial court is not free to disregard unequivocal and uncontradicted evidence that supports Director's contention." *McCarthy v. Director of Revenue*, 120 S.W.3d 760, 761 (Mo.App. E.D.2003).

"Moreover, our standard of review does not permit us to disregard uncontroverted evidence supporting the fact that all elements of Director's case were met." *Id.*

■ The probable cause required for the revocation of a person's driver's license is the level of probable cause necessary to arrest a driver for an alcohol-related violation. *Brown v. Director of Revenue*, 85 S.W.3d 1, 4 (Mo. banc 2002). "That level of probable cause will exist 'when a police officer observes an unusual or illegal operation of a motor vehicle and observes indicia of intoxication upon coming into contact with the motorist.' " *Id.* (citation omitted).

Here, Officer Keenan observed Webb engaging in an unusual and illegal operation of a motor vehicle when he saw her make a left turn without signaling, pull into the parking lot of a closed business, pull into a parking spot, sit in the parking spot for ten to fifteen seconds, back out of the parking spot, and drive in a circle around the parking spot. In addition, Officer Keenan observed several indicia of intoxication when he made contact with Webb. Webb admitted she had been drinking before Officer Keenan stopped her. Webb's breath smelled of alcohol, her eyes were watery, bloodshot, glassy and staring; her pupils were dilated and reacted poorly to light. She walked in an unsteady fashion, her speech was slurred, confused and mumbling. The Director also presented evidence that Webb performed poorly on field sobriety tests. This is sufficient to warrant probable cause to arrest Webb for driving while intoxicated. *See Roberts v. Wilson*, 97 S.W.3d 487, 492–93 (Mo.App. W.D.2002).

■ A driver's refusal to submit to a chemical test is governed by Section 577.041.1. A refusal to submit to a chemical test means declining on one's own volition to take the test authorized by Section

577.020, when requested by an officer to do so. *Id.* at 493. "A qualified or conditional consent or refusal is considered a refusal for purposes of Section 577.041.4(3), except where a driver qualifies a refusal on his or her having an opportunity to contact an attorney." *Id.* Section 577.041.1, provides:

> If a person when requested to submit to any test allowed pursuant to [S]ection 577.020 requests to speak to an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney. If upon completion of the twenty-minute period the person continues to refuse to submit to any test, it shall be deemed a refusal.

In order to trigger this twenty-minute period for attempting to contact an attorney, the driver must request to speak to an attorney at the time the driver is asked by the officer to submit to a chemical test. *Roberts,* 97 S.W.3d at 493. If the driver asks to speak to an attorney *after* refusing to submit to the chemical test, however, the arresting officer need not give the driver twenty minutes to attempt to contact an attorney. *Id.; Eckenrode v. Dir. of Revenue,* 994 S.W.2d 583, 585 (Mo.App. S.D.1999).

Here, Webb argues that Officer Keenan failed to give her twenty minutes to contact an attorney. Webb, however, did not testify nor produce any evidence at the hearing that she requested to speak with an attorney *before* refusing to submit to the chemical test of her breath. The only evidence produced at the hearing indicated that Webb refused to submit to the test at the time Officer Keenan read her the implied consent warning and asked her to submit to the test. Because the request to contact an attorney triggers the twenty-minute rule under Section 577.041.1 when it is made at the same time the driver is asked to submit to the chemical test, Officer Keenan was not required to give Webb twenty minutes to attempt to contact an attorney. *See Roberts,* 97 S.W.3d at 493; *Eckenrode,* 994 S.W.2d at 585. Therefore, the trial court erred in finding Webb did not refuse to submit to the chemical test of her breath and reinstating her driving privileges.

We reverse and remand for the trial court to enter judgment consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

GARY M. GAERTNER, SR., P.J., and SHERRI B. SULLIVAN, J., Concurs.