FARMERS AND MERCHANTS
INSURANCE COMPANY,
Plaintiff–Appellant,

v.

Paul HARRIS, Defendant–Respondent,

and

Robert D. Venters, Intervenor–
Respondent.

No. 17331.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 28, 1991.

Andrew C. Bullard, Bullard & Bullard, Kennett, for plaintiff-appellant.

Robert M. Black, Malden, for defendant-respondent.

H. Max Hilfiker, Malden, for intervenor-respondent.

SHRUM, Presiding Judge.

In this declaratory judgment action, the single issue is whether there is substantial evidence to support the judgment of the trial court that the "business pursuits" exclusion in a homeowners insurance policy issued by plaintiff Farmers and Merchants Insurance Company does not preclude liability coverage to the insured, defendant Paul Harris, for injuries suffered by intervenor Robert D. Venters in an accidental shooting. Because we find there is sufficient evidence to support the judgment, we affirm.

### FACTS

The incident that spawned this lawsuit occurred April 24, 1989, at a Kennett, Missouri, pawn shop owned and operated by Robert G. Venters (Venters), father of intervenor Robert D. Venters (Dimitri). The defendant had about a dozen guns for sale on consignment at the pawn shop. While the defendant was cleaning a shotgun owned by Venters, the firearm discharged seriously injuring Dimitri.

On the date of the shooting, the defendant was insured under a homeowner's policy issued by the plaintiff. The policy provided liability coverage but excluded coverage for bodily injury "arising out of business pursuits of an insured...." The plaintiff brought this action seeking a declaration that the defendant's activities and Dimitri's injuries "were in connection with and related to Defendant's business pursuits and as such fell outside the scope of liability coverage" because of the business pursuits exclusion.

In its petition, the plaintiff claimed that on the date of the shooting the defendant went to the pawn shop "for the purpose of attending to business pursuits concerning the care and sale of [his] guns" and that, after he delivered guns to sell and cleaned his guns which were already at the pawn shop, he accidentally discharged a shotgun belonging to Venters injuring Dimitri.

The parties agreed to submit the case to the trial court based on depositions on file. From the defendant's deposition the following facts favorable to the judgment emerge. The defendant is disabled and has not worked for 15 years or more; his wife provides the family income. The defendant buys, sells, and trades guns, although he does not consider himself to be "in business." He does no advertising, and his income from his gun trading is $500 or less a year. He has had a federal firearms license for 10 to 15 years which eliminates the need for him to obtain a permit from the sheriff each time he acquires a pistol; the license costs him $10 annually. He files an annual state sales tax return, paying $50 to $60 tax each year.

Two or three days before the shooting, the defendant delivered about a dozen of his guns to the pawn shop on consignment in an effort to help Venters get started in the gun business. On the day of the shooting, the defendant went to the pawn shop around noon. He said his purpose in going to the pawn shop was "strictly pleasure" and offered these reasons: to "loaf and visit," to "break the monotony," and to "kill time."

When the defendant arrived at the pawn shop, Venters had already removed the defendant's guns from the safe and was putting them on display behind the counter. The defendant did not clean any of his guns on that date, but, as a favor to Venters, he wiped fingerprints and dust from Venters's guns. He had cleaned two of Venters's guns and was cleaning the third when it discharged, injuring Dimitri.

The trial court found "the events described on April 24, 1989 and the injuries received by [Dimitri] did not arise out of business pursuits of Paul Harris." The court declared that the homeowners insurance policy provided liability coverage and that the plaintiff had a duty to defend in a lawsuit brought by Dimitri.

## DISCUSSION AND DECISION

Appellate review of a court-tried case is governed by Supreme Court Rule 73.01(c) and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). In cases tried without a jury, the judgment of the trial court shall be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32.

By its single point on appeal, the plaintiff claims the trial court's judgment was erroneous because "there is no substantial credible evidence" to support the conclusion that "the activities engaged in by [the defendant] on the date in question were not excluded as business related...."

The plaintiff first contends the evidence in support of the judgment is not "substantial," arguing,

[A]ll the facts and circumstances clearly indicate the reason [the defendant] went to the pawn shop that day. The facts clearly show he went as a gun dealer to tend to his merchandise and display it for sale. A business he had been in for some fifteen years. There is no substantial evidence to show otherwise.

Plaintiff's argument cannot be reconciled with the meaning of the phrase *substantial evidence*. "Substantial evidence is that which a reasonable mind would accept as sufficient to support a particular conclusion, granting all reasonable inferences which can be drawn from it...." *Fujita v. Jeffries*, 714 S.W.2d 202, 206 (Mo.App. 1986). "Substantial evidence is evidence which, if true, has probative force upon the issues...." *Reproductive Health Services, Inc. v. Lee*, 660 S.W.2d 330, 335 (Mo. App.1983).

■ The defendant's deposition provides substantial evidence to support the trial court's finding that "the events ... and injuries ... did not arise out of business pursuits of [the defendant]." The defendant testified he went to the pawn shop to "loaf" and "kill time" and that, after he arrived, he did not engage in any activity involving his guns. Rather, as a "favor," he voluntarily cleaned Venters's guns, an activity that resulted in bodily injury to Dimitri.

■ The plaintiff also contends "there is no 'credible' evidence to support" the trial court's judgment because the defendant's "deposition is full of contradictory statements concerning his actions on that day." Minor contradictions or confusion in the testimony of a witness does not require that the evidence be disregarded; the credibility and meaning of the testimony are for the trier of fact to decide. *Saunders v. Reorganized School District No. 2*, 520 S.W.2d 29, 37 (Mo.1975). Under Rule 73.-01(c)(2) an appellate court gives due regard to the trial court's opportunity to judge the credibility of witnesses. However, where the facts are derived solely from written documents such as pleadings, stipulations, exhibits, and depositions, the rule of deference to the trial court's assessment of credibility does not apply. *Southgate Bank and Trust Co. v. May*, 696 S.W.2d 515, 519 (Mo.App.1985). *See also Fay v. Director of Revenue*, 759 S.W.2d 879, 880 (Mo.App.

1988); *Landmark Bank v. First Nat'l Bank*, 738 S.W.2d 922, 925 (Mo.App.1987).

For us to conclude that the defendant's testimony was not credible, his deposition would have to contain "such diametrically opposed statements on a vital question as to rob it of all probative value and conclusively show that the witness testified untruthfully, one way or the other." *Saunders*, 520 S.W.2d at 37. The defendant's deposition contains some inconsistent statements about his purpose in going to the pawn shop on the day of the shooting and his activities after he arrived. However, the inconsistencies do not rob his testimony of "all probative value" and they do not "conclusively show" he testified untruthfully about his purpose and activities.

Judgment affirmed.[1]

FLANIGAN, C.J., and MAUS, J., concur.

---

1. Having determined there is evidence that the plaintiff's purpose in going to the pawn shop and his activities while he was there did not relate to his business pursuits, we need not decide if the requisite profit motive and conti-

nuity of business existed for defendant to be engaged in a business pursuit. *See, e.g., Safeco Ins. Co. v. Howard*, 782 S.W.2d 658, 659 (Mo. App.1989); *Union Mutual Ins. Co. v. Brown*, 809 S.W.2d 144, 146 (Mo.App.1991).