AUTOMOBILE CLUB INTER–
INSURANCE EXCHANGE,
Appellant,

v.

Lonny Ray CHAMBERLAIN, Wendall Ray Williams, Shelly Denise Danner, and Natalie Danielle Brown, Respondents.

No. 17934.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 23, 1992.

James R. Tweedy, Cape Girardeau, for appellant.

King E. Sidwell of Blanton, Rice, Sidwell & Ottinger, Sikeston, for respondents.

MONTGOMERY, Presiding Judge.

The sole issue in this case is whether Lonny Chamberlain (Lonny) was driving a 1989 Mercury Topaz with permission of the owner, Timothy Davis (Timothy), on June 17, 1989. The trial court, sitting without a jury, found that Lonny was a permissive user of the automobile and was a "covered person" under Timothy's insurance policy with the Automobile Club Inter–Insurance Exchange (Auto Club). The Auto Club appeals.

On June 17, 1989, Lonny, while operating Timothy's automobile, collided with a motor vehicle driven by Wendall Ray Williams (Wendall). Shelly Denise Danner and Natalie Danielle Brown were passengers in the vehicle driven by Lonny. Subsequently, the Auto Club brought a declaratory judgment action against all of the above-named parties seeking a determination that Lonny was not a covered person under its insurance policy at the time of the accident. Only Wendall opposed the Auto Club at trial, and he continues that opposition here.[1]

The undisputed facts reveal that Timothy and Lonny were friends and partners in a night club in Wyatt, Missouri. Both lived in Sikeston, Missouri. Their business relationship had commenced about two months prior to June 17, 1989. Sometime during the evening in question additional supplies were needed for the operation of the night club. Lonny advised Timothy he was going to the store for necessary supplies. At this point, the evidence becomes conflicting in nature.

Timothy testified Lonny took his car keys, without his knowledge, either from his coat pocket lying on the bar or from the bar area. Timothy insisted he gave Lonny no permission to drive his car, that Lonny had never driven his car previously, and he never loaned his car to anyone except family members.

Strangely, Lonny did not testify at trial. Instead, the Auto Club and Wendall, by stipulation, each introduced a different statement made by Lonny. The first statement was obtained by a claims adjuster for the Auto Club on July 18, 1989 (about one month after the accident). That statement was a recorded telephone conversation and was admitted into evidence in a transcribed form. There, Lonny said he took the car keys from Timothy's jacket, he never asked Timothy to use his car, that he had never used Timothy's car previously, and he nev-

---

1. The trial court took judicial notice of a pending bodily injury and property damage suit filed by Wendall against Lonny arising out of their accident. The record does not reflect the date this action was filed.

er knew of Timothy "letting anybody else drive it."

The second statement was handwritten, signed by Lonny and dated September 27, 1990 (over one year after the accident).[2] In this statement, Lonny said he went for supplies to a store across the street and could not obtain the supplies. He returned to the night club and advised Timothy of the problem suggesting that supplies could be obtained in Cairo, Illinois. Lonny continued by stating, "[Timothy] told me to go because he had been running. I asked where his keys were. He told me the keys were either in his jacket or on the bar next to his jacket. I got the keys and left to go to Cairo." Later in the statement Lonny avows, "I had permission to use" the car. Interestingly, both of Lonny's statements conclude with a recitation that his statements are true according to the best of his knowledge.

Two witnesses testified on behalf of Wendall. The first was Jimmy Lee Davis who was brought to court from the Mississippi County Jail. He had been incarcerated for probation violation for driving while license revoked. On the night in question Jimmy maintained he saw Timothy and Lonny arrive in the same car at the night club. Timothy was the driver. They opened for business, and Jimmy went inside. Later, he saw Lonny get in Tim's car and leave. The following testimony was then elicited:

Q. The same individual [referring to Lonny], had you seen him on any other occasions in Tim's car?

A. Yeah. They used to ride together. They was buddies.

Q. Now, during the times that you saw them riding together as buddies, were there any times when you observed the other guy, the partner, to be driving Tim's car?

A. Well, yeah. He used to drive it.

Q. Where did you see them when you saw the partner driving Tim's car?

A. Wilson City. They used to be in Wilson City all the time. We played basketball out there together, you know.

Next, Thomas Cooper offered the following testimony:

Q. Do you recall at this time whether you had seen Lonny Chamberlain and Tim Davis together on occasions before the accident occurred?

A. Yes, I have seen them.

Q. When you would see them, where would they be?

A. Around Wilson City and, you know, just in the general area.

Q. Now, did you see them in or out of a motor vehicle?

A. In and out.

Q. Have you seen them together in a motor vehicle before?

A. Yeah.

Q. And by them, I mean Tim Davis and Lonny Chamberlain.

A. Yeah.

Q. Who would be driving?

A. Well, I've seen that other boy drive the car and Tim wasn't in there, and I've seen them together, you know, in there.

Q. Okay. When you say you've seen the other boy drive the car, which car have you seen him to drive?

A. It was a blue car.

On cross-examination, Thomas admitted he was Wendall's uncle and further admitted he did not know who owned the blue car mentioned in his direct testimony.[3]

The liability insurance policy issued to Timothy did not provide liability coverage for any person "using a vehicle without the consent of the owner." As earlier mentioned, the trial court found Lonny's use of the 1989 Mercury Topaz was permissive.

 Our review of a court-tried case is governed by Rule 73.01(c) [4] and *Murphy v.*

---

**2.** The Auto Club maintains in its brief the handwriting was that of Wendall's attorney, but the record does not disclose the identity of the scribe.

**3.** Timothy's testimony indicates he now owns a blue Cutlass Supreme automobile, but the rec-

ord fails to reveal the color of the 1989 Mercury Topaz.

**4.** Rule references are to Missouri Rules of Court (1992).

*Carron*, 536 S.W.2d 30 (Mo. banc 1976). In cases tried without a jury, the judgment of the trial court shall be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32. The appellate court gives due regard to the trial court's determination on the credibility of witnesses. Rule 73.01(c)(2). The trial judge is in a better position than this Court to determine the credibility of the parties, their sincerity, character and other trial intangibles which may not be shown by the record. *In re Marriage of Chilton*, 576 S.W.2d 584, 585 (Mo.App.1979). The trial court can believe none, part,· or all of the testimony of any witness. *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988).

In its only point on appeal, the Auto Club claims the trial court's judgment was erroneous because the evidence conclusively established that the use of the automobile was not with the consent of Timothy, and the judgment of the trial court was not supported by substantial evidence and was against the weight of the evidence as a whole.

Wendall counters by arguing, "There was substantial evidence in the record which supported the trial court's finding that [Lonny] had the implied permission of [Timothy] to use the car on the night in question."

■ In determining the sufficiency of the evidence, this Court accepts as true the evidence and inferences from it favorable to the trial court's judgment and disregards contrary evidence. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). Any fact issue on which no finding was made is considered to have been found in accordance with the judgment. *Id.*

■ The Auto Club insurance policy in dispute does not provide coverage for any person who is operating the vehicle without consent of the owner. Permissive use of an automobile under an omnibus clause of an automobile insurance policy may be either express or implied. *Shelter Mut. Ins.*

*Co. v. Baker*, 753 S.W.2d 646, 649 (Mo.App. 1988). However, the judgment entered does not indicate whether Timothy's consent was express or implied. We must look to the evidence to determine if the judgment can be upheld under either theory. *Jennings v. City of Kansas City*, 812 S.W.2d 724, 728 (Mo.App.1991).

■ "When express permission is relied upon to establish omnibus coverage, that permission must be 'of an affirmative character, directly and distinctly stated, clear and outspoken.'" *Truck Ins. Exch. v. Hunt*, 590 S.W.2d 425, 430 (Mo.App.1979). The only evidence here which even remotely bears on express consent is found in Lonny's second statement. There, Lonny claimed Timothy told him to go for supplies and told him the location of his car keys. Assuming, without deciding, that evidence amounts to express consent, we simply do not believe Lonny is credible. We recognize Rule 73.01(c)(2) requires us to give due regard to the trial court's opportunity to judge witness credibility. However, where the facts are derived solely from written documents, such as Lonny's statements, "the rule of deference to the trial court's assessment of credibility does not apply." *Farmers and Merchants Ins. Co. v. Harris*, 814 S.W.2d 332, 334 (Mo.App.1991).

We are entitled to disregard Lonny's testimony because his two statements "contain such diametrically opposed statements on a vital question as to rob it of all probative value and conclusively show that the witness testified untruthfully, one way or the other." *Saunders v. Reorganized School Dist. No. 2 of Osage City*, 520 S.W.2d 29, 37 (Mo.1975).

Having determined no evidence of express consent supports the judgment, we look for evidence which could uphold the judgment on a theory of implied consent. That theory was treated to a scholarly discussion in *Bourne v. Manley*, 435 S.W.2d 420 (Mo.App.1968), where this Court said:

> We immediately recognize that one relying upon implied permission must prove it, that no implied permission arises

**382**

merely because someone obtains possession of a vehicle and uses it without the knowledge of the named insured, and that the permission contemplated by the omnibus clause is something more than mere sufferance or tolerance without taking steps to prevent, that term being used rather in the sense of leave, license or authority with the power to prevent. But implied permission is not confined to affirmative action, and "is not necessarily limited to that granted by arrangement between the parties or otherwise in definite, express terms." It may and usually does arise from a course of conduct of the parties over a period of time prior to the use in question.

*Id.* at 427 (footnotes omitted).

Under *Bourne*, Wendall has failed in his duty to prove implied consent even though he argues substantial evidence in the record supports the judgment. " 'Substantial evidence is that which a reasonable mind would accept as sufficient to support a particular conclusion, granting all reasonable inferences which can be drawn from it....' " *Farmers and Merchants Ins. Co.*, 814 S.W.2d at 334.

The only evidence on implied consent is earlier quoted in this opinion. Essentially, Jimmy Lee Davis only gave testimony that he saw Timothy and Lonny together in Wilson City in Timothy's car and Lonny "used to drive it." This testimony is totally ambiguous as to (1) the number of times Lonny was observed driving, (2) the time frame when the driving occurred, and (3) the type of vehicle driven, i.e., a 1989 Mercury Topaz, or otherwise. The testimony of Thomas Cooper is equally ambiguous. Additionally, he admitted he did not know the owner of the car which he saw occupied by Timothy and Lonny. The evidence from these two witnesses fails to show a course of conduct between Timothy and Lonny concerning use of the insured vehicle over a period of time prior to June 17, 1989. We are unable to say these two witnesses provided substantial evidence sufficient to support the judgment based on the theory of implied consent. The burden of proving coverage is upon the person seeking coverage. *Auto–Owners Ins. Co. v. McGaugh,*

617 S.W.2d 436, 444 (Mo.App.1981). Wendall has failed to carry his burden.

The judgment is reversed and the cause is remanded for entry of judgment in favor of the Auto Club.

FLANIGAN and PREWITT, JJ., concur.