**Barbara J. BOOTH, Respondent,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.**

No. ED 77044.

Missouri Court of Appeals, Eastern District, Northern Division.

Dec. 5, 2000.

222

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for appellant.

Branson L. Wood III, Hannibal, for respondent.

LAWRENCE E. MOONEY, Judge.

The Director of Revenue ("Director") appeals the trial court's setting aside of Barbara Booth's ("Driver") suspension of driving privileges. According to Director, the trial court's judgment finding Driver's blood alcohol content below .10% was a misapplication of law and against the weight of the evidence in that: (1) Driver never proved that her breath alcohol concentration was less than .10% or that the breath analyzer had malfunctioned; (2) Driver's breath test result was .182%, which cannot be rebutted by extrapolating a blood alcohol result in violation of the breath-to-blood ratio of 2100 to 1; and (3) Director proved probable cause to arrest · Driver for DWI. In addition, Director argues that Driver's evidence did not rebut Director's prima facie case because Driver's witness acknowledged that his calculation of Driver's blood alcohol content at .09% was subject to a margin of error of plus or minus 15%. We affirm.

On October 12, 1998, Driver was stopped by a Missouri Highway Patrol trooper for driving erratically, which consisted of

weaving and swerving onto the shoulder of the road. The trooper noticed a strong smell of alcohol on Driver, that her eyes were bloodshot and that her speech was slurred. As a result, trooper administered several field sobriety tests, including the horizontal gaze nystagmus test, counting backwards from eighty to sixty-five, and reciting the alphabet. Driver performed each test poorly and was given a portable breathalyzer test, which showed a blood alcohol content above .10%. The trooper arrested Driver for DWI, took Driver to the station for another breath test, and Driver's blood alcohol concentration was measured at .182%. Director subsequently suspended Driver's driving privilege pursuant to section 302.505 RSMo. (1998).

Driver filed a petition for review of the suspension in Ralls County Circuit Court, and a trial de novo was conducted. At trial, the following evidence was adduced: Driver is a sixty-year-old woman, who has suffered from lung problems including four collapsed lungs. Just prior to the arrest, Driver had attended a funeral, consumed one styrofoam cup of wine in the funeral home parking lot, and was then driving home when she was stopped.

According to the trial testimony of Dr. Terry Martinez, Driver's expert witness and an associate professor of pharmacology and toxicology at the St. Louis College of Pharmacy, Driver had only 49% of normal lung function, had both inhalation and exhalation restrictive deficit and her pulmonary function was "quite poor, considerably abnormal." Moreover, Dr. Martinez testified that the result of tests performed on Driver following her arrest indicated that she had a blood-to-breath ratio of one-half the normal, expected ratio. As a result, it was Dr. Martinez's opinion that breathalyzer results would be 200% of her actual blood alcohol, or twice as much. Therefore, Dr. Martinez estimated that Driver's actual blood alcohol at the time the test was administered would have been .09%, less than the required .10% necessary for suspension of her driving privi-

leges. Dr. Martinez, however, further testified that his calculation of Driver's blood alcohol level was subject to a plus or minus 15% margin of error.

Following the hearing, the trial court entered a judgment setting aside Director's suspension of Driver's driving privilege because her blood alcohol concentration was less than .10%. Director filed this timely appeal.

We review the trial court's decision in accordance with the standard of review set forth in *Murphy v. Carron*, and will sustain the trial court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. 536 S.W.2d 30, 32 (Mo. banc 1976).

To prove a prima facie case under sections 302.505 RSMo. (1998) and 302.535 RSMo. (1997), Director must show by a preponderance of the evidence that: (1) the person was arrested upon probable cause for driving while intoxicated or for violating an alcohol-related offense; and (2) at the time of the arrest, the person had an alcohol concentration of at least .10% by weight. *Smith v. Director of Revenue*, 13 S.W.3d 700, 704 (Mo.App. W.D. 2000). After Director proves its prima facie case, the burden then shifts to Driver to rebut Director's case by a preponderance of the evidence.

Driver concedes that Director established a prima facie case by presenting evidence that there was probable cause to arrest Driver for driving while intoxicated and evidence that her blood alcohol content was at least .10%. Therefore, the question remaining is whether Driver rebutted Director's case by a preponderance of the evidence.

In essence, Director first argues that although Driver may have presented evidence to rebut Director's claim that her blood alcohol level was not at least .10%, the unrebutted evidence that Driver's breath alcohol concentration was .182% mandated a suspension under the statute

without regard to how such result related to Driver's blood alcohol concentration. According to Director, section 302.505 requires the suspension of a driving privilege when the alcohol concentration in the person's blood, breath or urine is at least .10% by weight. Further, Director argues that the statute does not require any specific blood alcohol concentration, but only a specific alcohol concentration whether measured in Driver's blood, breath, or urine. As such, Director claims Driver's driving privileges were properly suspended. We disagree.

Section 302.505 states in pertinent part that a person's license shall be suspended or revoked if "the person was arrested upon probable cause to believe he was driving a motor vehicle while the alcohol concentration in the person's blood or breath was ten-hundredths of one percent or more by weight of alcohol in his blood, based on the definition of alcohol concentration in section 302.500." According to section 302.500 RSMo. (1994), alcohol concentration is defined as "the amount of alcohol in a person's *blood* at the time of the act alleged as shown by chemical analysis of the person's blood, breath, saliva or urine." (emphasis added.) Moreover, extensive case law exists requiring that the suspension of an individual's license be based upon blood alcohol concentration, and no Missouri decision has upheld a license suspension based upon breath alcohol concentration. Thus, Driver's breath alcohol concentration of .182% did not mandate a license suspension under the statute.

We also find unpersuasive Director's reliance on *State v. Brayman*, 110 Wash.2d 183, 751 P.2d 294 (1988). There, the issue raised involved an amendment to the Washington DWI statute that redefined per se DWI in terms of breath alcohol. According to the amended statutory language, a person is guilty of DWI if he "has 0.10 grams or more of alcohol *per two hundred ten liters of breath*, as shown by analysis of his breath, blood or other bodily substance . . ." (emphasis added.) Missouri, however, has made no such change to its DWI or administrative suspension statutes, and thus does not allow for the suspension of driving privileges to be based upon breath alcohol content.[1] As such, we find that the trial court did not err in setting aside Director's suspension of Driver's driving privileges.

■ We further disagree with Director's argument that Driver could not rebut the breath test result in that extrapolating a blood alcohol result from her breath test reading was in violation of the breath-to-blood ratio of 2100 to 1. Director's argued clockwork application of the breath-to-blood ratio seeks to make its proof not subject to rebuttal. While Director is correct that section 577.037 .2 RSMo. (1999) statutorily mandates the breath-to-blood ratio of 2100 to 1, its argument overlooks the language contained in subsection three of that very statute, which states that "[t]he foregoing provisions of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person was intoxicated." Further, Director's interpretation of section 577.037.2 does not advance Missouri's public policy of removing drunk drivers from the roads because the evidence that Driver adduced, and the court accepted, was that Driver was not drunk.

■ Driver produced evidence regarding the issue of intoxication from Dr. Martinez. In his opinion, Driver's diminished lung capacity produced a breath test result approximately twice as high as what a blood test might have shown. Therefore, according to Dr. Martinez, Driver's blood alcohol content was actually .09%, one-half

---

1. We note that the legislature amended section 577.012, driving with excessive blood alcohol content, to state that the "percent by weight of alcohol in the blood shall be based upon grams of alcohol per one hundred milliliters of blood or two hundred ten liters of breath."

of her .182% breath test result. Director, however, contends that Dr. Martinez's calculations are subject to a margin of error of plus or minus 15%, meaning that Driver's blood alcohol content could have ranged between .077% and .104%. Even though Missouri law does not automatically discount the Director's evidence by its margin of error in testing its submissibility, *Green v. Director of Revenue*, 961 S.W.2d 936, 940 (Mo.App. E.D.1998), Director argues that Driver's evidence in rebuttal should be automatically discounted by its margin of error. We disagree and believe such judgments belong to the trier of fact.

The common-sense bromide says, "What is sauce for the goose is sauce for the gander." Here that saying is most apt. If Director's evidence that Driver is "sauced" is not to be automatically discounted by a margin of error, Driver's evidence that she is not "sauced" is not to be automatically discounted by a margin of error. What is "sauced" for the goose is "sauced" for the gander.

We affirm.

SULLIVAN, P.J., and RICHARD B. TEITELMAN, J., concur.