Craig A. KAUFMAN, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. WD 64797.

Missouri Court of Appeals,
Western District.

Feb. 28, 2006.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 2, 2006.

Application for Transfer Denied
June 30, 2006.

Jeremiah W. (Jay) Nixon, Atty. Gen., Sarah Grindon Madden, Office of Attorney General, Jefferson City, Forest "Trey" W. Hanna, III, Kansas City, for Appellant.

Jeffrey Scott Eastman, Gladstone, for Respondent.

RONALD R. HOLLIGER, Judge.

The Director of Revenue (the Director) appeals the order of the Circuit Court of Platte County, Missouri, setting aside the suspension of Mr. Kaufman's driving license under Section 302.505[1] for driving under the influence of alcohol. The sole point on appeal is that Mr. Kaufman failed to present sufficient evidence to rebut the Director's *prima facie* case that Kaufman drove with a blood alcohol content (BAC) of 0.08 percent or more. The judgment setting aside Mr. Kaufman's license revocation is reversed.

## Facts

"We review the evidence in a light most favorable to the judgment, giving deference to the trial court's factual determinations." *Singleton v. State,* 120 S.W.3d 218, 221 (Mo.App.2003). On December 7, 2003, Mr. Kaufman was pulled over by a highway patrol officer who saw him cross the center line multiple times shortly before 1:00 A.M. Smelling alcohol on Kaufman's breath, the officer asked him to perform field sobriety tests and, based on the results of those sobriety tests, arrested him for driving while intoxicated. At the jail, Kaufman consented to a breath test, which was conducted at about 2:06 A.M. The officer followed the prescribed procedures for administering the breath test, and the test indicated a 0.081 percent BAC.

The Director notified Kaufman that his license would be suspended pursuant to Section 302.505, and Kaufman requested a trial *de novo* to contest the suspension. At trial, Kaufman presented the testimony of John Zettl, a forensic toxicologist. Zettl testified that as a person's body processes ethanol (which is the kind of alcohol in intoxicating beverages), the body releases acetaldehyde, and that acetaldehyde is then expelled in the person's breath. Zettl explained that the breath testing device used on Kaufman, a "DataMaster," can distinguish between ethanol and acetaldehyde by using filters, but that Missouri laws and regulations do not require this type of filtration. Zettl concluded that the DataMaster was not calibrated to determine whether the test results indicated only the amount of ethanol in Kaufman's breath, or the combination of ethanol and acetaldehyde. Zettl ultimately opined that he was uncertain whether Kaufman's BAC exceeded the legal limit, but that the lack of acetaldehyde filtration was "a problem" because it raises questions about the reliability of the breath test.

## Discussion

■ We must "affirm the trial court's judgment unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the trial court erroneously de-

---

1. All statutory references are to Mo.Rev.Stat. (2003) unless otherwise indicated.

clares or applies the law." *Verdoorn v. Dir. of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). We defer to the trial court's determinations of credibility of witnesses. *Id.* "If the evidence is uncontroverted or admitted so that the real issue is a legal one as to the legal effect of the evidence, then there is no need to defer to the trial court's judgment." *Id.*

Section 302.505.1 requires the Director to revoke a person's license if the person was arrested on probable cause to believe the person was driving "while the alcohol concentration in the person's blood, breath, or urine" was 0.08 percent or more. The driver may request a trial *de novo* to contest the matter. *Verdoorn*, 119 S.W.3d at 545. At trial, the Director carries the burden of proof on the elements, namely (1) probable cause for the arrest and (2) a BAC of 0.08 percent or more. *Id.* Once the Director presents evidence of these elements, "[t]his evidence creates a presumption that the driver was intoxicated." *Id.* The driver may then "rebut the [D]irector's . . . case with evidence that his [BAC] did not exceed the legal limit." *Id.*

The trial court found that Kaufman was arrested with probable cause, but that Mr. Zettl's testimony "overcame any presumption of validity inferred by the breath test result." Viewing the evidence in the light most favorable to the judgment, *Singleton*, 120 S.W.3d at 221, we find Kaufman did not present sufficient evidence to rebut the presumption that he was legally intoxicated. The character of the evidence presented by Kaufman at trial is virtually identical to that presented by the driver in *Verdoorn*, where the driver's expert testified that the breath test was inaccurate, and that it was " 'equally likely' [the driver's BAC] level was 'above or below' the legal limit." 119 S.W.3d at 547. The Mis-

souri Supreme Court's conclusion, reversing the trial court's order reinstating the driver's license, merits full quotation:

Verdoorn presented no evidence that his [BAC] was in fact below the legal limit at the time he was stopped. The expert's testimony showed only that Verdoorn could have been intoxicated or that his [BAC] *might not* have reached the [legal limit]. . . . This inconclusive testimony was insufficient to rebut the presumption of intoxication established by the [D]irector's *prima facie* case.

*Id.*

Applying *Verdoorn*, we recently rejected a similar challenge to the reliability of a breath test. In *Orton v. Director of Revenue*, the driver presented Mr. Zettl as an expert to testify that the breath testing equipment presumes the driver's breath temperature is thirty-four degrees Celsius, but that a person's average breath temperature is closer to thirty-five degrees Celsius. 170 S.W.3d 516, 521 (Mo.App.2005). In that case, "Mr. Zettl opined that a breath test result obtained using the Missouri procedure would not be accurate or reliable to a reasonable degree of scientific certainty. Mr. Zettl, however, did not testify to a reasonable degree of scientific certainty that [the driver's BAC] was below . . . the legal limit[.]" *Id.* We concluded that Mr. Zettl's testimony was insufficient to rebut the Director's *prima facie* case that the driver was legally intoxicated. *Id.* at 522.

We have elsewhere rejected a similar challenge to the reliability of a breath test, where the expert failed to conclusively state that the driver's BAC was below the legal limit. In *Singleton v. State*, the driver's stomach and esophagus had been surgically removed several years prior to his arrest for driving while intoxicated. 120 S.W.3d at 223. The driver's doctor testified that because of the effects of the

surgery, the breath test would yield a result "a lot higher than it would" for a person without the surgery. *Id.* However, the doctor "failed to give any opinion regarding [the driver's] actual BAC." *Id.* at 224. We held that this evidence failed to rebut the Director's *prima facie* showing that the driver was intoxicated. *Id.*

■ From these cases, it is clear that a driver fails to present sufficient evidence to rebut the Director's *prima facie* case where the rebuttal evidence challenges the scientific reliability of the breath test, but fails to specifically adduce evidence that the driver's BAC "was in fact below the legal limit at the time he was stopped." *Verdoorn,* 119 S.W.3d at 547. Applying this test, we hold that Kaufman failed to present sufficient evidence to rebut the *prima facie* case showing that he was driving while legally intoxicated.

■ Kaufman claims that Mr. Zettl testified that Kaufman was, to a reasonable degree of scientific certainty, under the legal limit when the breath test was administered. The record contradicts Kaufman's assertion. The portion of the transcript Kaufman points to contains the following question by Kaufman's attorney and Mr. Zettl's answer:

> Q. . . . [C]an you say within a reasonable degree of scientific certainty that this [BAC] number would be below .08, based upon the history of being stopped at a quarter ['til] one and not being tested until 2:06[;] would acetal-

dehyde appear on the breath, at that—in that time-frame?

> A. Logically, yes. You would have some acetaldehyde, since it's been, I mean the alcohol should be, at that time, be detoxified, sure.

The question is compound, asking first whether Zettl can say to a reasonable degree of certainty that the BAC would be below 0.08, and second whether acetaldehyde would appear on the breath. There can be no doubt about which of those two questions Zettl answered: Zettl clarified that he was answering the latter question, about whether there would be any acetaldehyde.[2] The inquiry continued:

> Q. And the breakdown then is gonna be reflected in acetaldehyde[,] which when combined with ethyl alcohol, is slightly above the .08 threshold in this case?

> A. Yes.

This lends no aid to Kaufman's argument. This is precisely the type of challenge to the validity of the breath test rejected in the cases cited above. The Director's cross-examination of Mr. Zettl amplifies Zettl's equivocation:

> Q. So can you say whether or not at the point of the breath test, [Mr. Kaufman] even had any acetaldehyde in his breath?

> A. It's logical[.] I guess he did, but there's no evidence from the instrument, obviously.

---

**2.** Even if we viewed Mr. Zettl's answer as ambiguous as to which part of the compound question he answered, we would conclude that his answer is insufficient to rebut the Director's *prima facie* case, because ambiguous evidence—standing by itself—is not sufficient evidence. *See State v. Goad,* 926 S.W.2d 152, 156–57 (Mo.App.1996) (affirming a rape conviction supported by sufficient evidence but reversing a sodomy conviction where only ambiguous—and therefore insufficient—evidence indicated the defendant touched victim's vagina with his hand); *Auto. Club Inter-Ins. Exch. v. Chamberlain,* 839 S.W.2d 378, 382 (Mo.App.1992) (reversing and finding insufficient evidence to support a finding of implied consent where the only evidence of implied consent was ambiguous).

This testimony does not rebut the Director's *prima facie* case, because the presence of acetaldehyde does not mean the concentration of ethanol was below the legal limit. The cross-examination continued:

Q. Can you, with a reasonable degree of scientific certainty, say that his breath test was either definitely . . . below or above an [sic] .08, at that time?

A. At the time of driving or at the time he was tested?

Q. At the time he was tested.

A. . . . . [W]hat I have to say with the way the testing in Missouri's run, I can't really have an accuracy determination that it's even a valid .08.

We note that Mr. Zettl did not answer the Director's ultimately important, yes-or-no question. Apparently aware of this, the Director sought a final time, on re-cross, to pin him down one way or another:

Q. Can you absolutely say that Mr. Kaufman was below a .08, on that evening?

A. Nothing is ever a hundred percent assured, no.

Of course, *absolute certainty* is not required, only *evidence* that the driver "was in fact below the legal limit." *Verdoorn,* 119 S.W.3d at 547. Zettl's equivocal testimony is not evidence that Kaufman "was in fact below the legal limit." Kaufman points to no other portion of the record, and we find none, supporting his assertion that he rebutted the Director's *prima facie* case. Consequently, Kaufman failed to present sufficient evidence to rebut the presumption that follows from the Director's *prima facie* case, that Kaufman was driving while intoxicated.

Kaufman's real complaint is that the Missouri regulations approving the use of the DataMaster and its protocol for use are insufficient to ensure reliability. His expert testified that Missouri does not require that the DataMaster filter out non-ethanol substances such as acetaldehyde, although he claims that the machine has the capacity. He has cited results in the State of Washington reported in the *Journal of the Academy of Forensic Sciences.* Mr. Zettl testified that Missouri regulations, including 19 CSR 25–30.060, permit the presence of as much as 0.025 percent of foreign material such as other forms of alcohol that could undermine the reliability of the DataMaster. Under the current state of Missouri law, however, Kaufman cannot attack the accuracy of the test results in this manner to rebut the Director's *prima facie* case. There was no testimony contradicting, and Kaufman seems to admit, that the DataMaster used was calibrated as required by current Missouri regulations and was operated under the protocol established by those rules. If he believes those regulations are inadequate he must attack them directly. He cannot do so here unless his testimony also established that his blood alcohol was below the legal limit. *Verdoorn,* 119 S.W.3d at 547.

The judgment is reversed.

PATRICIA A. BRECKENRIDGE, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.