**Meredith KRIEGER, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. WD 68864.**

Missouri Court of Appeals,
Western District.

Sept. 16, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 28, 2008.

---

Nicole L. Loethen, Jefferson City, for appellant.

Meredith Krieger, Forest Gove, OR, pro se.

Before JAMES M. SMART, JR., P.J., LISA WHITE HARDWICK, and JAMES EDWARD WELSH, JJ.

JAMES EDWARD WELSH, Judge.

The Director of Revenue appeals the circuit court's judgment setting aside the Director's suspension of Meredith A. Krieger's driving license for driving while intoxicated. The circuit court found that the Director had made a prima facie case for revoking Krieger's driving license but found that Krieger rebutted the Director's case through expert testimony about the effect of the "metabolic curve" on blood alcohol content. The Director asserts that the circuit court erred in admitting the expert's testimony because the facts and data upon which the expert based his "metabolic curve" calculation were not "otherwise reasonably reliable" as required by section 490.065.3, RSMo 2000. We disagree and affirm the circuit court's judgment.

Viewing the evidence in the light most favorable to the circuit court's judgment, the evidence established that, on December 31, 2005, between 7:00 P.M. and 9:15 P.M., Krieger drank two vodka tonics at evenly-spaced intervals at her mother's house in Richmond, Missouri. Each vodka tonic contained 1 1/4 ounces, or one jigger, of 80–proof vodka. At 9:30 P.M., Krieger went to Duke's Bar and drank two "really strong" double vodka tonics, each containing two jiggers of vodka. According to Krieger's trial testimony, after she finished her last drink at Duke's Bar, she left the bar, drove her car, and was pulled over between three to four minutes later at 10:42 P.M. by Corporal Brandon Clariday of the Richmond Police Department. Clariday stopped Krieger's vehicle because he saw the car sit for an unusually long time at two stop signs, make a wide and unusually slow turn, and twice drive in the middle of the road.

When Clariday approached Krieger's car, Clariday smelled a strong odor of alcohol emanating from it. Clariday asked

Krieger whether she had been drinking, and Krieger replied that she had. When Clariday asked Krieger to get out of her car, Krieger had trouble finding the door handle so Clariday opened the door for her. Clariday asked Krieger to accompany him to his patrol car, which Krieger did, but she staggered when she walked. While Krieger and Clariday were inside the patrol car, Clariday smelled the odor of alcohol on Krieger's breath. Clariday asked Krieger to perform three field sobriety tests: the horizontal gaze nystagmus (HGN), the walk-and-turn, and the one-leg stand. Krieger performed poorly on all three tests, scoring six out of six clues on the HGN test, nine out of nine clues on the walk-and-turn test, and four out of five clues on the one-leg stand test.

Clariday concluded that Krieger was intoxicated, and, at 10:52 P.M., he arrested her for driving while intoxicated and transported her to the Richmond Police Department. At the police department, Krieger agreed to undergo a breath test to determine her blood alcohol content. Clariday administered the breath test to Krieger at 11:13 P.M., and the breath test indicated a blood alcohol level of .09 percent.

At trial, Krieger offered expert testimony from Terry Tyler Martinez, Ph.D. Martinez said that he can determine the "metabolic curve" of a person's blood alcohol content at a specific time if he knows the person's pattern of alcohol consumption over a period of time and has a breath sample of that person. He said that alcohol is absorbed from the stomach with a delay and reaches a person's bloodstream and brain about 52 minutes after consumption. According to Martinez, the specific time that a person drinks and the amount of alcohol a person consumes are important factors in determining the "metabolic curve."

Martinez said that based upon his calculation to a reasonable degree of scientific certainty, Krieger's blood alcohol content when she was stopped by Clariday at 10:42 P.M. was .047 percent. He testified that his calculation was based upon Krieger's representation that she drank "two regular one and a quarter ounce 80 proof vodka beginning at 7:00 plus she had consumed another two-an-one-half ounce 80 proof vodka and she consumed a final two-and-one-half ounce which had not been yet absorbed" by the time she was stopped. He determined that Krieger had not yet absorbed all of the final drink when she was stopped based upon his understanding that Krieger "had just stopped drinking only five to ten minutes before she was stopped by the police."

The circuit court found that the Director established his prima facie case under section 302.505, RSMo Cum.Supp.2007, but concluded that Krieger had rebutted the Director's prima facie case. The circuit court reinstated Krieger's driving license, and the Director appeals.

■ To establish a prima facie case under section 302.505, the Director must establish that Krieger was arrested upon probable cause to believe that she was driving a motor vehicle while the alcohol concentration in her breath was .08 percent or more. *Murphy v. Dir. of Revenue*, 170 S.W.3d 507, 509–10 (Mo.App.2005). Once the Director has established a prima facie case, the burden is on Krieger to rebut the Director's prima facie case with evidence that her blood alcohol content did not exceed the legal limit. *Verdoorn v. Dir. of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003).

■ In his sole point on appeal, the Director asserts that Krieger did not rebut his prima facie case. In particular, the Director contends that the circuit court erred in admitting the results of Mar-

tinez's calculation of Krieger's blood alcohol content based upon the "metabolic curve." The Director asserts that the facts and data upon which Martinez based his calculation were not "otherwise reasonably reliable" as required by section 490.065.3,[1] in that Krieger's testimony conflicted with Martinez's testimony as to when she stopped drinking and Krieger's testimony conflicted with what she told Clariday on the night of her arrest as to when she stopped drinking.

"It is not the role of this court to reweigh the evidence or to substitute our judgment with regard to the credibility of witnesses. Instead, we must view the evidence in the light most favorable to the trial court's judgment. The determination of a witness' credibility is a factual issue." *Kisker v. Dir. of Revenue*, 147 S.W.3d 875, 877 (Mo.App.2004). We defer to the circuit court on matters of credibility because it has a " 'superior ability to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles not revealed in the transcript.' " *Id.* (citation omitted).

Martinez based his "metabolic curve" calculation upon information that Krieger stopped drinking only five to ten minutes before she was stopped by the police. Indeed, at trial, Krieger testified that, after she finished her last drink at Duke's Bar, she left the bar, drove her car, and was pulled over between three to four minutes later at 10:42 P.M. by Clariday. Based upon this testimony, Martinez's conclusion, that Krieger stopped drinking only five to ten minutes before being stopped by the police and that Krieger could not have absorbed all of the last drink by the time

she was stopped by the police, was not based upon facts or data which were not "otherwise reasonably reliable." The circuit court, therefore, did not err in admitting the results of Martinez's metabolic curve calculation of Krieger's blood alcohol content.

Although the State points out that other trial testimony from Krieger indicated that she stopped drinking at 10:00 P.M. and that Clariday's alcohol influence report says that Krieger had her last drink at 10:00 P.M., resolution of conflicts in testimony are for the circuit court to resolve. *Wall v. Holman*, 902 S.W.2d 329, 331 (Mo. App.1995). The circuit court is free to believe none, part, or all of a witness's testimony. *Engelage v. Dir. of Revenue*, 197 S.W.3d 197, 198 (Mo.App.2006). By accepting the testimony of Martinez, we can infer that the circuit court found that Krieger's testimony, that she left the bar after she finished her last drink and was stopped by the police three to four minutes later, to be more credible and accurate than Krieger's other testimony and the information in Clariday's alcohol influence report. *Kisker*, 147 S.W.3d at 877 (affirming the circuit court's admission of expert's "metabolic curve" testimony because determination of credibility was for the circuit court).

The mere fact that this court might reach a different conclusion on the same evidence does not mean that the circuit court erred in finding that Krieger rebutted the Director's prima facie case. *Id.* at 876. We, therefore, affirm the circuit court's judgment setting aside the Di-

---

1. Section 490.065.3 says, "The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable."

rectors' suspension of Krieger's driving license for driving while intoxicated.

All concur.