Scott A. **RAISHER**, Appellant,

v.

**DIRECTOR OF REVENUE,**
Respondent.

**No. WD 69090.**

Missouri Court of Appeals,
Western District.

Jan. 27, 2009.

Jeffrey S. Eastman, Gladstone, MO, for Appellant.

Nicole L. Loethen, Jefferson City, MO, for Respondent.

Before: THOMAS H. NEWTON, C.J., JOSEPH M. ELLIS, and JAMES EDWARD WELSH, JJ.

THOMAS H. NEWTON, Chief Judge.

Scott Raisher appeals the trial court judgment affirming the Director of Revenue's suspension of his driver's license. Mr. Raisher claims the trial court erred in its decision because it allowed an officer's testimony to invalidate scientific data. We reverse.

**Factual and Procedural Background**

Mr. Raisher was driving home when State Trooper Steven Salfrank pulled him over for failing to maintain his lane. Trooper Salfrank smelled alcohol in Mr. Raisher's truck and noticed that his eyes were bloodshot and watery. Trooper Salfrank asked Mr. Raisher if he had been drinking. Mr. Raisher responded, "Not too much." Mr. Raisher performed three sobriety field tests; his performance indicated that he was intoxicated. During the administering of these tests, Trooper Salfrank heard Mr. Raisher speak in a mumbled and slurred voice. He arrested Mr. Raisher for driving while intoxicated. At the police station, Trooper Salfrank read an "Implied Consent Law" form, advising Mr. Raisher that he could submit to a breathalyzer test or refuse and have his license revoked. Mr. Raisher consented to the test.

After Trooper Salfrank, a Type II permit holder, instructed Mr. Raisher, Mr. Raisher blew into the breathalyzer also called the DataMaster. Noticing that Mr. Raisher was not breathing according to his instructions, Trooper Salfrank told Mr. Raisher to move away from the machine. The machine printed out a report indicat-

ing Mr. Raisher's blood alcohol content (BAC) was .078%, under the legal limit of intoxication. Trooper Salfrank reinstructed Mr. Raisher on how to breathe and ordered Mr. Raisher to breathe again using this technique. He warned Mr. Raisher that failure to comply would amount to a refusal. Mr. Raisher complied and the machine printed out a report indicating Mr. Raisher's BAC was .094%, over the legal limit of intoxication.

The Director suspended Mr. Raisher's license under section 302.505[1] based on the second BAC reading of .094%. Mr. Raisher filed a petition for review in the circuit court. He argued that his BAC was below the legal limit as evidenced by the first BAC reading of .078%. The Director adduced evidence that the difference between the two test results was attributable to Mr. Raisher's improper breathing. Mr. Raisher adduced evidence that the machine contained software to detect improper breath samples by providing an error code and that no error code displayed on the machine during the first test. After hearing the evidence, the circuit court affirmed the Director's suspension of Mr. Raisher's license; it did not explain its decision. Mr. Raisher appeals.

## Standard of Review

We affirm the trial court's judgment affirming the suspension of a driver's license unless the decision is against the weight of the evidence, there is no substantial evidence to support the decision, or the decision erroneously applies or declares the law. *Kisker v. Dir. of Revenue,* 147 S.W.3d 875, 876 (Mo.App. W.D.2004). We view evidence and reasonable inferences in the light most favorable to the judgment. *Id.*

1. Statutory references are to RSMo 2000 and the Cumulative Supplement 2007.

## Legal Analysis

In his sole point, Mr. Raisher argues that the trial court erroneously applied the law when it affirmed the Director's decision to suspend his license because in doing so, it shifted the Director's burden of persuasion to him. The Director has the burden of proof to establish by a preponderance of evidence that probable cause existed to arrest the driver for driving while intoxicated and that an evidentiary breath test determined the driver's BAC was beyond the legal limit.[2] *Verdoorn v. Dir. of Revenue,* 119 S.W.3d 543, 545 (Mo. banc 2003). If the Director establishes both prongs, a *prima facie* case that the driver was intoxicated is established. *Id.* The driver is entitled to rebut the *prima facie* case with evidence that his blood alcohol content did not exceed the legal limit. *Id.* The driver's burden is one of production and not persuasion, thus the Director maintains the burden of proof—preponderance of evidence—throughout the proceeding. *Id.* at 546.

It is undisputed that the Director established a *prima facie* case against Mr. Raisher for driving while intoxicated. There was probable cause to arrest Mr. Raisher, and a breathalyzer test result showed that his BAC level was beyond the legal limit. Moreover, there was a *prima facie* foundation to admit both BAC test results. *See Green v. Dir. of Revenue,* 961 S.W.2d 936, 939 (Mo.App. E.D.1998), *overruled on other grounds by Verdoorn,* 119 S.W.3d at 546. Trooper Salfrank testified that both tests were performed following the rules and regulations using the same DataMaster, which the Missouri Department of Health has approved for BAC testing.

2. Section 577.012 states a driver with a BAC of .080% or more is in excess of the permissible BAC.

██ Mr. Raisher contends that he rebutted the Director's *prima facie* case by introducing the first BAC reading of .078%. Rebuttal evidence must raise a genuine issue of fact "as to whether [the driver's] blood alcohol concentration was above the legal limit at the time" he was arrested. *See Kisker,* 147 S.W.3d at 877. A driver successfully rebuts the presumption of intoxication by showing a malfunction in the breathalyzer machine because it questions the accuracy of the test result. *See Vernon v. Dir. of Revenue,* 142 S.W.3d 905, 911 (Mo.App. S.D.2004) (a variance from a reading of .000 in a blank test evidenced a malfunction); *Kennedy v. Dir. of Revenue,* 73 S.W.3d 85 (Mo.App. S.D. 2002) (a reading that the "system won't zero" evidenced a malfunction). A driver may also successfully rebut a Director's *prima facie* case by adducing scientific evidence that his or her BAC "was in fact below the legal limit." *Kaufman v. Dir. of Revenue,* 193 S.W.3d 300, 302–03 (Mo.App. W.D.2006); *see also Booth v. Dir. of Revenue,* 34 S.W.3d 221 (Mo.App. E.D.2000) (holding driver successfully rebutted presumption by adducing scientific evidence that her BAC was below the legal limit), *overruled on other grounds by Verdoorn,* 119 S.W.3d at 546; *Krieger v. Dir. of Revenue,* 266 S.W.3d 316 (Mo.App. W.D. 2008) (same); *Kisker,* 147 S.W.3d at 877–78 (same).

Mr. Raisher adduced evidence that the breathalyzer reported a legal BAC level of .078%, the first time he blew into the machine. Two conflicting BAC results computed within minutes of each other, on the same machine by the same operator, raises a genuine issue as to whether Mr. Raisher's BAC was above the legal limit. Thus, Mr. Raisher rebutted the *prima facie* case by providing scientific evidence that his BAC was below the legal limit. The question becomes whether the Director showed by a preponderance of the evidence, in light of Mr. Raisher's rebuttal evidence, that Mr. Raisher's BAC level was above the legal limit.

Preponderance of the evidence is "that degree of evidence that is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows the fact to be proved to be more probable than not." *Bain v. Wilson,* 69 S.W.3d 117, 120 (Mo.App. W.D.2002) (internal quotation marks and citation omitted), *overruled on other grounds by Verdoorn,* 119 S.W.3d at 546. The Director contends that it met its burden of proof because Trooper Salfrank testified that the second test result was more accurate than the first test result. Trooper Salfrank reasoned that the breath sample for the second test came from the depth of the lungs, providing a deep alveolar sample,[3] unlike the breath sample provided for the first test. The Director argues that "whether the first test result, versus the second, was accurate was a factual issue for the trial court to determine," and the trial court's decision indicates this issue was determined in its favor. In response, Mr. Raisher contends that the trial court misapplied the law when it relied on such testimony to invalidate the first test result because a "proper blowing requirement" is not listed in the state regulations governing the op-

---

3. "To satisfy [19 CSR 25–30.011(2)(B) of the Missouri Code of State Regulations (2001)] requirement that the breath sample be end-expiratory (alveolar) air, the DataMaster automatically monitors breath flow, breath volume, and changes in breath alcohol concentration to ensure a valid sample is obtained." MISSOURI BREATH ALCOHOL PROGRAM, MO. DEP'T OF HEALTH AND SENIOR SERVS., BREATH ALCOHOL OPERATOR MANUAL 63 (2008), http://www.dhss.mo.gov/Lab/BreathAlcohol/TypeIIIOperatorManual.pdf.

eration of breathalyzers and the machine was designed to detect improper blowing.

We are cognizant that we have deferred to the trial court's ruling where evidence could support two different conclusions. *Baldridge v. Dir. of Revenue,* 82 S.W.3d 212, 220 (Mo.App. W.D.2002). One of the issues in *Baldridge* was whether the evidence showed that the driver had refused to submit to a chemical test. *Id.* at 219. The director evidenced the refusal with an officer's testimony that Baldridge intentionally allowed air to escape through his nose and mouth in an attempt to "fake out" the machine while blowing into the breathalyzer three times. *Id.* at 220. The trial court disbelieved the officer because there was evidence that the third test generated a printout. *Id.* This court viewed the evidence to be in conflict as to whether Baldridge refused and thus deferred to the trial court in light of the standard of review. *Id.* This case, however, does not control our analysis.

Here, the issue is not refusal but whether the Director proved by a preponderance of the evidence that Mr. Raisher's BAC level was above the legal limit. Had Mr. Raisher's denial of the improper breathing been the only evidence in conflict with the trooper's testimony, we would agree with the Director that the issue is one of credibility, as decided in *Baldridge.* But Mr. Raisher also adduced testimony from the same trooper that the DataMaster is equipped with software to ensure that the breath sample meets its parameters, that the machine would generate an error code if the breath sample failed to meet those minimum parameters, and that the machine did not generate such a message but instead analyzed the breath sample. Thus, the issue is not credibility, but whether the evidence that Mr. Raisher did not breathe properly during the first test has greater weight than the machine's complete analy-sis of that same breath sample in determining whether it is more probable than not that the second test is more accurate than the first test. In other words, we must decide whether the trooper's observation is sufficient to overcome the presumed validity of the first test result.

Mr. Raisher argues that our precedent "ha[s] taught that a trial court may not disregard, ignore, or refuse to admit a chemical test result obtained in compliance with the regulations of the department of health and senior services." In *Fitzgerald v. Director of Revenue,* this court held that the trial court erroneously applied the law when it found a breath test result was unreliable absent evidence that the machine malfunctioned. 922 S.W.2d 478, 481 (Mo.App. S.D.1996) ("A claim that blood alcohol test results are invalid can only succeed if there is some evidence to suggest a malfunction of the machine."); *see also Meyer v. Dir. of Revenue,* 34 S.W.3d 230, 234–35 (Mo.App. E.D.2000) (reversing trial court's ruling that driver rebutted the *prima facie* case despite testimony that BAC reading might have been higher because of blowing twice into the same mouthpiece), *overruled on other grounds by Verdoorn,* 119 S.W.3d at 546. Logic dictates that we should hold the Director to the same standard to invalidate a test result from a breathalyzer showing a BAC below the legal limit. *See Booth,* 34 S.W.3d at 225 ("If the Director's evidence that the Driver is 'sauced' is not to be automatically discounted by a margin of error, Driver's evidence that she is not 'sauced' is not to be automatically discounted by a margin of error.").

Here, the Director did not adduce any scientific evidence to invalidate the BAC reading of .078% from the breathalyzer but attributed this test result to improper breathing. Precedent suggests that when an officer observes a driver improperly

breathing, the machine verifies improper breathing by failing to analyze the breath sample or by failing to print out a test result. *See Snow v. Dir. of Revenue,* 935 S.W.2d 383 (Mo.App. S.D.1996); *Freeman v. Dir. of Revenue,* 113 S.W.3d 307, 310 (Mo.App. S.D.2003). Recent precedent suggests that for a breathalyzer to analyze a breath sample that is not from the depth of the lungs, the operator must press the override button that prevents the machine from measuring breath volume. *See Spinner v. Dir. of Revenue,* 165 S.W.3d 228, 232 (Mo.App. S.D.2005). Trooper Salfrank did not press the override button during the first test. Because the machine analyzes only valid breath samples and an incomplete test is indicative of improper breathing, Trooper Salfrank's testimony was not credible and should have been disregarded under the doctrine of destructive contradictions.

■■ The doctrine of destructive contradictions provides that testimony loses its probative value when it "is so inherently incredible, self destructive or opposed to known physical facts on a vital point or element that reliance on the testimony is necessarily precluded". *State v. Davison,* 46 S.W.3d 68, 79 (Mo.App. W.D.2001) (internal citation and quotation marks omitted). Trooper Salfrank testified that the machine is programmed to detect an inadequate breath sample, and will provide an error reading if the breath sample fails to meet its parameters. Yet, he also testified that the first test should be disregarded because the breath sample was not deep alveolar air although the machine did not generate an error code. Implicit in this testimony is the proposition that the breathalyzer analyzed Mr. Raisher's surface alveolar air, which it is designed to reject. Trooper Salfrank was not qualified to invalidate the first test as inaccurate based on his observation that the

machine contradicts. Assuming the breathalyzer provided a complete analysis of Mr. Raisher's surface alveolar air that would be evidence that the machine was malfunctioning. A malfunctioning machine would invalidate both tests, resulting in no scientific proof of Mr. Raisher's BAC. Consequently, the trial court erroneously applied the law in relying on Trooper Salfrank's testimony to negate the accuracy of the first test result. The Director failed to meet its burden of proof. Mr. Raisher's point is granted.

**Conclusion**

Therefore, we conclude that Mr. Raisher successfully rebutted the Director's *prima facie* case with his first BAC reading of .078%, because the trooper's testimony was insufficient to invalidate that test result. Neither test result shows insufficient sample nor any other error, so neither test is proof of Mr. Raisher's BAC level. The burden is on the Director to prove by a preponderance of evidence that the driver's blood alcohol content exceeded the legal limit. At best, the evidence of Mr. Raisher's BAC level is in equipoise and, therefore, the Director has not met its burden of proof. When faced with mutually exclusive test results from the same machine, it is incumbent upon the Director to produce additional evidence that the driver's BAC exceeded the legal limit by an additional test result either from a different type of test (blood or saliva) or perhaps from a different breathalyzer. Without scientific proof that the second test result is more accurate than the first test result, the trial court erred in finding the Director carried his burden.

Our decision does not cause a hardship to the Director because if an officer is dissatisfied with the results of the breath

test, under section 577.020 [4] the driver must submit to a second type of chemical test: either a blood, urine, or a saliva test. *See Smith v. Dir. of Revenue*, 260 S.W.3d 896, 902–03 (Mo.App. S.D.2008) (finding the officer was authorized under section 577.020.2 to ask a driver to submit to blood test despite the result of the breath test); *State v. Simmons*, 186 S.W.3d 418 (Mo. App. S.D.2006) (holding the limit of two tests in section 577.020.2 applies to the types of chemical test performed and not the number of times the same chemical test is performed). Therefore, the judgment is reversed, and Mr. Raisher's driving privileges are reinstated.

JOSEPH M. ELLIS and JAMES EDWARD WELSH, JJ., concur.

4. Section 577.020 states in relevant part:

   1. Any person who operates a motor vehicle upon the public highways of [Missouri] shall be deemed to have given consent to ... a chemical test or tests of the person's breath, blood, saliva or urine [to determine] the alcohol or drug content of the person's blood ...

   . . .

   2. The implied consent to submit to the chemical tests listed in [577.020.1] shall be limited to not more than two such tests arising from the same arrest, incident or charge.